208 So.2d 901 (1968)
Sammie E. HOUSTON
v.
Herman PAGE, d/b/a Page's Supermarket.
No. 44819.
Supreme Court of Mississippi.
April 8, 1968.
*902 William S. Lawson, Tupelo, for appellant.
Mitchell, McNutt & Bush, Tupelo, for appellee.
SMITH, Justice:
Sammie E. Houston, as plaintiff, brought an action for damages for personal injuries in the Circuit Court of Lee County against appellee Herman Page, d/b/a *903 Page's Supermarket. At the conclusion of the trial, the jury returned a verdict for Houston in the amount of $28,941.66. A motion for a new trial was made by defendant-appellee Page upon the ground, among others, that the verdict was grossly excessive. The trial court, in sustaining the motion, entered the following order:
Came on this cause for hearing on Motion for a new trial and the court upon hearing the argument of counsel and reviewing medical evidence finds that the proof in this cause is insufficient to support a verdict of such size, and that the verdict is excessive.
It is therefore ordered that the Motion for a New Trial be and is hereby sustained.
From the above order Houston has appealed here and asks that the case be reversed, the jury's verdict reinstated and a judgment entered for him in accordance with the verdict. He asserts: (1) The verdict was not excessive under the evidence, and (2) Fixing the amount of the award was a matter peculiarly within the province of the jury and the trial court erred in substituting its judgment for that of the jury.
Appellee-defendant Page challenges the appeal, saying that, in the first place, the appeal should be dismissed as premature because the court's order did not limit the new trial to the issue of damages alone, and therefore, no interlocutory appeal lies from the order, or alternatively, if he should be mistaken as to this, the evidence adduced was incapable of supporting so large a verdict as that returned by the jury and the trial court was correct in holding that it was grossly excessive and in awarding a new trial upon the issue of damages alone.
Mississippi Code 1942 Annotated section 1536 (1956) provides:
Every new trial granted shall be on such terms as the court shall direct; and no more than two new trials shall be granted to the same party in any cause. Provided, however, that when the sole ground for a new trial is the excessiveness or inadequacy of damages assessed, the party aggrieved may elect to appeal from the order granting a new trial. (emphasis added).
Although several grounds were assigned in the motion for a new trial filed by appellee, the trial court's order notices only one and it is sufficiently clear from the order itself that the motion was sustained and a new trial granted upon "the sole ground" of the "excessiveness * * * of damages assessed." We think the appeal from the order by Houston as the party aggrieved is authorized by Section 1536, supra.
Both sides cite awards made in other personal injury cases in support of their widely divergent views of the propriety of the jury's verdict in this case. While these cases are of interest and relevant to the question here under consideration, in Bush v. Watkins, 224 Miss. 238, 80 So.2d 19 (1955), this Court, in concluding that there is no exact yard stick by which to measure the amounts of jury verdicts, said, "Each case must depend upon its own facts."
The rule to be applied here, in reviewing the action of the trial court in ordering a new trial, is well settled.
In Dendy v. City of Pascagoula, 193 So.2d 559, 564 (Miss. 1967), it is stated as follows:
We have consistently held in a long line of cases that this Court, in considering the action of the trial court in passing on a motion for a new trial will consider the action with favor and support it unless it is manifestly wrong. Especially is this true where a new trial has been granted, since the rights of the parties are not finally settled at this point. We will not disturb such action unless it is a manifest abuse of discretion. Capital *904 Transport Co., Inc. v. Segrest, 254 Miss. 168, 181 So.2d 111 (1965); Rayner v. Lindsey, 243 Miss. 824, 138 So.2d 902 (1962); Long v. Magnolia Hotel Co., 236 Miss. 655, 111 So. 645, 114 So.2d 667 (1959); Harper v. Miss. State Highway Commission, 216 Miss. 321, 62 So.2d 375 (1953); Smith v. Walsh, 63 Miss. 584 (1886).
We have carefully reviewed the record before us, giving particular attention to the evidence adduced relating to the nature, extent, effect and permanency of appellant's injuries and to the testimony regarding special damages sustained, including his expenses and loss of earnings, both past and prospective.
Appellant alleged that on June 22, 1964, while delivering meat to appellee's market, he had slipped in water which had been allowed to accumulate on the floor, and had fallen. As the result of this fall, he hurt his right knee and suffered a concussion when his head struck the floor. Dr. Love saw him about two hours later at the local hospital. Houston complained of pain in his right knee. There was no swelling, no dislocation, and no deformity. Neurologically Dr. Love found him "completely sound." X-rays made of the knee were normal and continued so until he was discharged on July 1. Dr. Love stated that Houston received "conservative" treatment during this period consisting chiefly of "hot applications to the knee." After this he was seen at the office several times, and on these visits complained of some pain in his right knee. Dr. Love said that he gave "some pain medicine, some medicine to reduce swelling, and that is just about it." On August 16, 1964, however, Dr. Love gave him an injection of cortisone because he thought he needed it.
Houston said the "doctor [Dr. Love] told me to go back to work and I went back to work and my feet slipped out from under me." He reinjured his knee in this fall and again went to Dr. Love. Dr. Love arranged that Houston go to Campbell's Clinic. At the clinic, Houston was seen by Dr. Sage, an orthopedic surgeon, on October 6, 1964. Dr. Sage said Houston gave him a history of having reinjured his knee when he had fallen about a week before. Dr. Sage said that Houston had told him that this second fall had been "because of weakness in his right knee." He also told Dr. Sage he had previously, in 1960, broken both the tibia and fibula in his right leg. This latter injury had been sustained when Houston was in a tractor accident.
X-rays, front and side, were normal. A cast was applied but, as Houston continued to complain of pain, Dr. Sage explored the knee surgically and found a tear in the medial semilunar cartilage and a contusion of the articular cartilage. The torn semilunar cartilage was removed surgically and the incision closed. By January 1965 Houston was lifting fifteen-pound weights twenty-five times, twice daily, and Dr. Sage said he was able to do almost any kind of work except that requiring "a lot of climbing up and down stairs or dextrous use of his right lower extremity." Asked what he meant by the latter phrase, Dr. Sage said he thought Houston should not take a job "dodging cattle" where his activities would be similar to those of a football player making a "broken field run in a football game." The doctor said that the operation performed on Houston was of the same type as that performed on "Mantle and Namath," well-known professional athletes, the former a baseball player, the latter a football player, both of whom still played after removal of the damaged cartilage.
Dr. Sage said that while there was, of course, some pain, that pain in the knee would have lasted about six weeks after the operation, followed by discomfort due to fatigue attributable to weakness of the thigh musculature due to disuse (rather than to the pain in the knee). The muscle weakness, he said, could be expected to disappear after resumption of use and exercise of the limb. It was Dr. Sage's opinion *905 that Houston would have some permanent disability of the knee which he estimated at twenty percent of the leg. He said Houston would limp "when he ran." However, Dr. Sage said that by January 1965, Houston was able to straighten his leg "absolutely straight" and to bend it within ten percent of normal.
Medical expenses were shown to have amounted to $1,695.42. There was a loss of earnings for the several months of Houston's disability, although the exact amount of this loss was uncertain from Houston's testimony as reflected by his direct and cross examinations. Nor is it made clear to what extent, if any, his earnings, since resuming work, have been adversely affected by his injury.
We have noted also the conflicting evidence touching the circumstances of appellant's fall. On that issue, the evidence for appellant tends to show that the fall resulted solely from appellee's negligence, in maintaining his premises in an unsafe condition, and that for appellee tends to show the contrary and that appellant fell and injured himself solely because of his own want of care for his own safety. On this evidence, the doctrine of comparative negligence was submitted to the jury under the court's instructions.
Although fixing the amount of damages in a case of this kind is primarily a matter for the jury, the statute clearly contemplates that the trial judge, from his station of vantage, shall see to it that such awards are kept reasonably within the bounds of the evidence. If the trial court should consider that a verdict is, upon the evidence, either grossly excessive or inadequate, he may, and indeed should, set it aside and award a new trial. Where a new trial is granted upon the ground that a verdict is excessive, the trial court may suggest a remittitur as an alternative to the new trial.
In Rayner v. Lindsey, 243 Miss. 824, 832, 138 So.2d 902, 905 (1962), this Court said:
The trial judge not only heard the testimony of the witnesses, including the medical evidence, but he saw the plaintiff in court, and in addition had an opportunity to hear the history of other similar cases read and discussed by eminent attorneys, to the end that when it became his duty to pass upon a motion for a new trial upon the question of excessiveness of the verdict, he could focus not only the facts but the law on the question of damages. It was his duty in the first instance to determine whether or not a new trial should be granted movant.
Upon the whole record, we are unable to say that the trial court in granting a new trial in this case upon the question of damages alone manifestly abused its discretion.
The appellant complains that the trial court, in ordering a new trial, should have suggested, as an alternative, the entering of a remittitur. But suggesting a remittitur as an alternative to a new trial, where a new trial has been granted as to damages only is a matter addressed to the sound discretion of the trial judge. The judge may do so or not as he sees fit. However, we consider it to be of value to this Court on appeal to have that expression of the trial judge's view as to what verdict he considers justified or warranted in the case. Of course, the court neither orders nor requires that a suggested remittitur be accepted but only affords the plaintiff the right, if he should elect to do so, of accepting it instead of retrying the issue. For these reasons, the failure of the trial court to suggest a remittitur in this case is not error. But this circumstance does not preclude this Court from suggesting a remittitur on appeal on the basis of the record before it.
We consider the evidence in the record sufficient to support a verdict in the amount of $21,441.66. Therefore, if plaintiff shall, within fifteen days after *906 the judgment entered upon this appeal becomes final, enter a remittitur in the sum of $7,500, the verdict of the jury in the reduced amount of $21,441.66 will be reinstated, and judgment will be entered here for appellant in that amount. Otherwise, the order directing a new trial upon the issue of damages alone will be affirmed.
Affirmed and remanded for new trial on the issue of damages only unless appellant enters remittitur.
GILLESPIE, P.J., and RODGERS, JONES and BRADY, JJ., concur.