501 So.2d 416 (1987)
Richard F. CHERRY and Edward L. Cherry,
v.
ANTHONY, GIBBS, SAGE, a/k/a Underwriter's at Lloyds, London, Lloyds of London.
No. 56652.
Supreme Court of Mississippi.
January 21, 1987.
*417 Alfred Lee Felder, McComb, C.R. McRae, Margaret P. Ellis, Pascagoula, for appellants.
K. Hayes Callicutt, Shell, Buford, Bufkin, Callicutt & Perry, Jackson, John C. McLaurin, Sr., McLaurin & McLaurin, Brandon, for appellee.
BEFORE ROY NOBLE LEE, P.J., and ANDERSON and GRIFFIN, JJ.,
ANDERSON, Justice, for the Court:
Both parties appeal from a judgment of the Circuit Court of Rankin County. The Cherry brothers feel aggrieved by that judgment insofar as it denied that they were entitled to be paid the face value of the insurance contract in dispute. Anthony, Gibbs, Sage, Underwriter's at Lloyds of London (hereinafter Lloyds) are cross-appealing as to the trial court's rejection of their plea of res judicata in bar to the Cherry's action.
In 1974 Richard and Edwin Cherry decided to go into the trucking business together. To that end, they bought a new Peterbilt tractor-trailor rig, which they described as "top of the line" for 1974. In 1978, the brothers began to think it expedient to have their truck insured in case it was damaged. They were especially concerned that the rig not be underinsured. Their usual insurance agent did not handle business of this type and recommended that the Cherrys see Jimmy Ray Estes of the Green Insurance Agency. It was determined that only Lloyds of London or Travelers offered the insurance the Cherrys sought, with premiums they could afford to pay. Ultimately, the Cherrys decided to buy a policy from Lloyds of London with a face value of $35,000. The Green agency got the policy through the Haynes Brinkley Co., a general agency company handling risks that would not normally be accepted by standard market insurance companies. The Cherrys alleged that Estes represented to them that Lloyds would pay the face value of the policy if the truck were destroyed. Over the next four years the Cherrys made regular payments on the premiums.
On August 8, 1978, Ed Cherry was driving the truck to Houston, TX when it caught fire on the highway near Union Church, MS and was completely destroyed. The Cherrys notified Estes of the loss; Estes in turn notified Haynes Brinkley, the agent for Lloyds. They dispatched Mr. J.D. Douglas to adjust the claim. Douglas and Haynes Brinkley insisted throughout that the policy was for the actual cash value of the truck, which was assessed by Douglas at $21,500. Later, Douglas learned that before destruction the truck had had an out of frame overhaul, which normally increases the value of the truck from $9,000 to $10,000. The circuit judge incorporated this increase in his judgment for the actual cash value of the truck.
The Cherrys sued, claiming that the policy entitled them to be paid on its face value, regardless of the condition of the *418 truck. Lloyds, on the other hand, has insisted throughout the litigation that the face value was only a ceiling and the coverage was for actual cash value of the truck.
The Cherrys originally filed this action in the Circuit Court of Hinds County. Lloyds demurred on the ground that their liability if any, was limited to the actual cash value. The court sustained the demurrer, giving the plaintiffs leave to amend their complaint within seven days. The Cherrys, however, took no action within the prescribed period, and so the judgment against them became final. The Cherrys then refiled the action in Jackson County, whereupon Lloyds moved for a transfer to Hinds County, the site of the original action. The Jackson County Court, for reasons not apparent from the record, transferred the action to Rankin County. It was the circuit court of that county that rendered the judgment now being appealed.

LAW

CROSS-ASSIGNMENT OF ERROR
Since Lloyds knew that the Circuit Court of Hinds County had rendered a take-nothing judgment against the Cherrys, it is not surprising that it pleaded that judgment in bar to the present action. The trial judge denied the motion to dismiss, finding that a certain letter from Lloyds counsel, Hayes Callicutt, constituted a waiver of any res judicata argument on Lloyds behalf. Lloyds now argues that there was no such waiver, and that the Hinds County judgment was res judicata to this action.
The briefs contain detailed discussion of the Callicutt letter. It is, however, not necessary for us to determine its significance, since the argument for res judicata suffers from a flaw much more glaring.
Mississippi follows the general rule that for res judicata to apply, the parties in the two actions must be substantially identical. Dickson v. Western Tar Products Corp., Inc., 277 So.2d 430 (Miss. 1973); Pray v. Hewitt, 254 Miss. 20, 179 So.2d 842 (1965). See also Nilsen v. City of Moss Point, 674 F.2d 379, 382 (5th Cir.1982) (applying Mississippi law).
In the present action, the list of co-defendants includes Haynes Brinkley, Inc. In the first action the Cherrys sued Haynes Brinkley as an individual. We cannot agree that there is not a substantial legal difference between the corporate insurance agency and the individual who runs it. Therefore, the parties of the two actions are not the same, and res judicata does not apply.

DIRECT ASSIGNMENT OF ERROR NO. I
The disputed insurance contract has several parts, three of which pertain to this appeal. The first is a "Certificate of Insurance" effected with Underwriter's at Lloyds, London." It contains a section setting forth the limits of the insurer's liability and stating that "[t]he limits of the company's liability against each such coverage shall be as stated herein, subject to all terms of this policy having reference thereto." The amount of insurance on the Peterbilt tractor is $35,000.
Attached to this was a second document, marked "Insuring Agreements." It is to this that Lloyds points in order to establish "the terms of this policy having reference thereto." Paragraph 2 of this document contains the following language: "The limit of the Underwriter's liability ... is the amount insured stated in the Schedule or the actual cash value of the vehicle, whichever is the less." (Emphasis added).
The Cherrys' argument rests on the third document attached to the contract proper, which is denominated a "Stated Amount Coverage Endorsement." It says:
In consideration of the premium of which this policy is issued, the insured warrants that the value of the vehicle is the amount of insurance carried. In the event of loss, the Company may, at its option, pay the stated amount of insurance to the insured, less the deductible amount provided, and such payment shall entitle the Company to all salvage resulting after loss.
*419 The Cherry brothers argue that the endorsement supports them in a reasonable belief that in the event of a total loss, they would receive the "stated amount"  that is, the full face value of the policy  regardless of the actual condition of the vehicle at the time of the loss. Lloyds, on the other hand, insists that the endorsement was merely the insureds' warranty that the goods were worth the amount for which they were to be insured, and that payment was to be for the actual cash value, the figure of $35,000 being merely a ceiling. The trial judge found that there was no ambiguity in the contract, and that Lloyds position was the correct one.
It has long been the law in Mississippi that in construing particular provisions in a contract, a court will look to the document as a whole. Hinds Motor Co. v. Hederman, 201 Miss. 859, 867, 30 So.2d 70, 72 (1947). When this principle is applied to the case at bar, the Cherrys' interpretation collapses. The insuring agreement unequivocally states that the coverage will be limited either to the face value of the policy or to the actual cash value at the time of loss, whichever is less. In other words the face value is to act as a ceiling; it does not irrevocably fix the amount to be awarded. When the endorsement is considered in conjunction with the plain terms of the rest of the contract, it becomes obvious that the insured was merely warranting that the truck was worth the face value of the policy at the time it was bought.
The Cherrys protest that the circumstances surrounding the sale of the policy indicate that they were seeking a policy which would pay off in the full face amount in the event of any loss. Even if this be admitted, it avails them nothing. The most basic principle of contract law is that contracts must be interpreted by objective, not subjective standards. A court must effect "a determination of the meaning of the language used, not the ascertainment of some possible but unexpressed intent of the parties." Hunt v. Triplex Safety Glass Co., 60 F.2d 92, 94 (6th Cir.1932). The mere fact that the parties disagree about the meaning of a provision of a contract does not make the contract ambiguous as a matter of law. Union Planters Leasing v. Woods, 687 F.2d 117, 119 (5th Cir.1982). Parole evidence as to surrounding circumstances and intent may be brought in where the contract is ambiguous, but where, as here, the contract was found to be unambiguous it has no place. The parties are bound by the language of the instrument.
Both Richard Cherry and Edwin Cherry testified that they had read the entire policy. Even if they had not, knowledge of its contents would be imputed to them as a matter of law. Atlas Roofing Mfg. Co., Inc., v. Robinson and Julienne, Inc. 279 So.2d 625, 629 (Miss. 1973); Zepponi v. Home Ins. Co., 248 Miss. 828, 833-34, 161 So.2d 524, 526 (1964).
Lastly, it strains credulity to argue that the Cherrys could reasonably have expected an insurance company to pay them the face amount of an insurance policy regardless of the actual cash value of the item insured. Very few, if any, insurance companies would issue a policy on this basis. It is the general practice in the insurance industry to pay the actual cash value at the time of loss. R. Keeton, Insurance Law § 3.9 (1971).
In short, we have no basis for holding that the trial judge erred in his construction of the contract.
DIRECT ASSIGNMENT OF ERROR NO. II: THE COURT ERRED IN NOT SUBMITTING THE ISSUE OF FRAUD TO THE JURY.
In his opinion on the motions for new trial, the trial judge stated, "this court remains convinced that insufficient evidence was presented that the defendant was guilty of any fraud ..." In order to prove fraud in Mississippi:
... The plaintiff must prove (1) a representation, (2) its falsity, (3) its materiality, (4) the speaker's knowledge of its falsity or ignorance of its truth, (5) its intent that it should be acted on by the hearer and in the manner reasonably contemplated, *420 (6) the hearer's ignorance of its falsity, (7) its reliance on its truth, (8) his right to rely thereon, and (9) his consequent and proximate injury.

Franklin v. Lovett Eqmt. Inc., 420 So.2d 1370, 1373 (Miss. 1982).
In substance, the Cherrys' claim of fraud is based on the allegation that Jimmy Ray Estes of the Green Insurance Agency made a false representation to them that in the event of total loss, they would be paid the entire face amount on the policy. The difficulty here is that neither Richard Cherry nor Jimmy Ray Estes testified that Estes had told the Cherrys they would get $35,000 no matter what. The only testimony to that effect was by Edwin Cherry who said, "the way Mr. Estes explained to me, that's what it (i.e., the endorsement) was to insure that we would in the event of a loss get $35,000." This statement however, was made on a proffer of evidence after the jury had retired. It was not repeated in the presence of the jury.
This Court has held that a trial court's conclusion that a deed had not been procurred by fraud would not be disturbed on appeal in the absence of compelling evidence that the trial judge was wrong. Hickey v. Anderson, 215 Miss. 52, 60 So.2d 513 (1952). That is certainly not the case in the action sub judice. In fact, except for the single statement of Edwin Cherry made out of the presence of the jury, there was a complete failure of proof as to the issue of fraud. Moreover, in Mississippi fraud must be shown by clear and convincing evidence. Parker v. Howarth, 340 So.2d 434 (Miss. 1976). We are of the opinion that the record does not show, by clear and convincing evidence or otherwise, that the defendants were guilty of fraud.
It follows, of course, that without any proof of fraud or abuse the Cherrys were not entitled to an instruction on punitive damages.
DIRECT ASSIGNMENT OF ERROR NO. III: THE COURT ERRED IN NOT SUBMITTING THE QUESTION OF TORTIOUS BREACH OF CONTRACT OR BAD FAITH TO THE JURY.
This entire assignment of error is based on the assumption that Lloyds had a contractual obligation to pay the Cherrys the face amount of the policy in the event of a total loss. As seen above, there was no such obligation. In the alternative, the Cherrys argue that bad faith was demonstrated when the adjuster offered $21,500 as the actual cash value of the truck at the time of loss. Further, they complain that the adjuster did not amend that estimate after learning the truck had an out-of-frame overhaul which would have increased its value substantially.
However, it is difficult to see how the insurance adjuster can be faulted for bad faith when it is clear that the Cherrys did not cooperate with him in his investigation. It is undisputed that the Cherrys categorically refused to accept anything less than $35,000, the face amount of the policy. The Cherrys refused even to give Douglas a statement. In order to estimate the value of the truck, Douglas was compelled to contact local truck dealers, so that they could quote him prices on comparable trucks. In view of this record, any error in fixing the actual cash value of the truck could be attributed to the Cherrys with at least as much justice as it could to Douglas.
In fact, Clum Lindsey, the owner of Capital Truck and Body Shop in Jackson, testified that a truck of that age would be worth between $19,000 and $22,000 depending on its condition. Nine pictures of the truck taken by Douglas after the accident appear in the record; after looking at these pictures Lindsey noted damage unrelated to the fire and said that after seeing them he would lower his estimate some $2,500.
In short, the record before this Court furnishes no basis for saying the trial judge erred by not submitting the bad faith issue to the jury.
DIRECT ASSIGNMENT OF ERROR NO. IV: THE TRIAL COURT ERRED IN REDUCING THE AWARD OF THE JURY.
*421 The jury brought an award for $53,231.47. On motion for a remittitur the court reduced this judgment to $41,137.73. Essentially, this incorporated the $21,500 offered by Douglas, plus $10,000 to account for the added value of the out-of-frame overhaul, together with towing and storage fee, plus interest. The trial court made this adjustment on the motion by the defendant for a new trial or in the alternative a judgment notwithstanding the verdict or remittitur. In the end, the adjustment took the form of a judgment notwithstanding the verdict.
Our leading case on remittiturs is Houston v. Page, 208 So.2d 901, 905 (Miss. 1968). There this Court stated:
Although fixing the amount of damages in a case of this kind is primarily a matter for the jury, the statute clearly contemplates that the trial judge, from his station of vantage, shall see to it that such awards are kept reasonably within the bounds of the evidence. If the trial court should consider that a verdict is, upon the evidence, either grossly excessive or inadequate, he may, and indeed should, set it aside and award a new trial. Where a new trial is granted upon the ground that a verdict is excessive, the trial court may suggest a remittitur as an alternative to the new trial. 208 So.2d at 905.
It appears the trial judge selected the wrong vehicle for adjusting the jury's verdict. Instead of issuing a judgment notwithstanding the verdict, he should have granted the motion for new trial or denied it on condition of plaintiffs accepting the remittitur. However, the result would have been the same had the technically correct procedure been followed. Therefore, the judge's action was harmless error within the meaning of Supreme Court Rule 11.
Nor is there any basis for saying the trial judge abused his discretion in this matter. The only witnesses who estimated the value of the truck at more than $35,000 were the Cherrys themselves. The defendants, on the other hand, produced four heavy-duty truck salesmen/mechanics, none of whom placed the value of a Peterbilt truck of comparable age and wear higher than $22,000.
Finding no reversible error, we conclude that the judgment of the Circuit Court must be affirmed.
AFFIRMED.
WALKER, C.J., ROY NOBLE LEE and HAWKINS, P.JJ., and DAN M. LEE, PRATHER, ROBERTSON, SULLIVAN and GRIFFIN, JJ., concur.