# IN THE SUPREME COURT OF MISSISSIPPI
## NO. 94-CA-00025-SCT

*JOAN WILLIAMS HOLLOMAN*

*v.*

*RONALD B. HOLLOMAN*

| | |
|---|---|
| DATE OF JUDGMENT: | 12/06/93 |
| TRIAL JUDGE: | HON. WOODROW WILSON BRAND JR. |
| COURT FROM WHICH APPEALED: | OKTIBBEHA COUNTY CHANCERY COURT |
| ATTORNEY FOR APPELLANT: | CHARLES T. YOST |
| ATTORNEY FOR APPELLEE: | REX F. SANDERSON |
| NATURE OF THE CASE: | CIVIL - DOMESTIC RELATIONS |
| DISPOSITION: | REVERSED, RENDERED, AND REMANDED - 9/19/96 |
| MOTION FOR REHEARING FILED: | 10/3/96 |
| MANDATE ISSUED: | 5/5/97 |

EN BANC.

SMITH, JUSTICE, FOR THE COURT:

¶1. Joan Williams Holloman appeals to this Court from an adverse decision of the Oktibbeha County Chancery Court where she had sought a one-half interest in Ronald B. Holloman's Savings and Investment Plan maintained through his employer. The chancellor was asked to interpret two clauses of the property settlement agreement, the modification of the final decree of divorce and the entry of a Qualified Domestic Relations Order, and additionally to determine whether Ronald was in contempt for failure to provide income and retirement fund information.

¶2. The chancellor held that the issue was the "interpretation of a contract, not determination of marital assets or equities between the parties." He found that the "parties had full knowledge at the time of the preparation and entry of their separation agreement and are bound by the clear reading thereof," thus Joan's request was denied. Aggrieved, Joan appeals and assigns as error the following:

> **THE TRIAL COURT ERRED BY NOT HOLDING RONALD HOLLOMAN IN CONTEMPT FOR REFUSING TO EXECUTE A FURTHER QUALIFIED DOMESTIC RELATIONS ORDER TO COVER ALL OF HIS RETIREMENT BENEFITS, INCLUDING THE SAVINGS AND INVESTMENT PLAN, AS CONTEMPLATED BY THE SETTLEMENT AGREEMENT.**

**(1) THE HUSBAND'S EMPLOYER'S SAVINGS AND INVESTMENT PLAN WAS A RETIREMENT BENEFIT CONTEMPLATED BY PARAGRAPH VI.D. OF THE PROPERTY SETTLEMENT AGREEMENT.**

**(2) ALTERNATIVELY, THE HUSBAND'S EMPLOYER'S SAVINGS AND INVESTMENT PLAN WAS A RETIREMENT FUND "OF ANY DESCRIPTION" AS CONTEMPLATED BY PARAGRAPH VI.1E. OF THE PROPERTY SETTLEMENT AGREEMENT.**

**(3) THE PARTIES' INTENT IN THE EXECTUION OF THE SETTLEMENT AGREEMENT WAS TO INSURE THE WIFE'S CONTINUED ALIMONY SUPPORT UPON THE HUSBAND'S RETIREMENT.**

## THE FACTS

¶3. Ronald B. Holloman and Joan Williams Holloman were granted a divorce on the grounds of irreconcilable differences, ending a second marriage to each other on May 8, 1989. Both parties were represented by separate counsel throughout the proceedings. The Holloman's settlement agreement was approved and accepted by the chancellor and incorporated into the divorce decree.

¶4. Pursuant to the terms of the agreement, Ronald agreed to pay Joan one half of his monthly retirement benefits that he would accrue prior to retirement. Ronald had two separate retirement plans with his employer, Union Camp Corporation. One known as the Union Camp Corporation Retirement Plan for Salaried Employees and the other as a Savings and Investment Plan.

¶5. After the divorce decree was entered, Joan inquired of Ronald what accounts were involved concerning his retirement funds. Ronald only advised her of his employer's Retirement Income Plan. The Hollomans had a Qualified Domestic Relations Order (QDRO) entered naming Joan as the payee under that Retirement Income Plan.

¶6. Subsequent to the entry of that order, Joan discovered that the Retirement Income Plan did not contain the total assets that Ronald had accumulated toward retirement. Ronald had another account, a 401-K account called a Savings and Investment Plan. Joan contended that this account was governed by the settlement agreement. Ronald refused to comply with Joan's request. Joan filed a motion to cite Ronald for contempt, and thereafter amended, to have the 401-K incorporated into a revised QDRO in conformity with the settlement agreement.

¶7. The chancellor determined that the parties contracted themselves to an acceptable termination of their marriage and fair distribution of their marital assets. He treated the agreement as a contract, noted that contracts are construed against the preparer, and since Joan's attorney had prepared the document, any knowledge of marital assets attributed to her was imputed to her attorney. He found that the separation agreement "failed to show the specificity required to modify the Final Decree of Divorce and the Qualified Domestic Relations Order." He also determined that Ronald was current in his payment of support and had supplied adequate financial information to Joan. He therefore, denied her relief on her request that Ronald be held in contempt. Following denial of all relief and Joan's timely Motion For New Trial, which was overruled, this appeal followed.

## STANDARD OF REVIEW

¶8. This Court will not disturb the chancellor's opinion when supported by substantial evidence unless the chancellor abused his discretion, was manifestly wrong, clearly erroneous or an erroneous legal standard was applied. *Mount v. Mount*, 624 So. 2d 1001, 1004 (Miss. 1993); *Bowers Window and Door Co., Inc. v. Dearman*, 549 So. 2d 1309 (Miss. 1989)(citing *Bullard v. Morris*, 547 So. 2d 789, 791 (Miss. 1989); *Gibson v. Manuel*, 534 So. 2d 199, 204 (Miss. 1988); *Johnson v. Hinds County*, 524 So. 2d 947, 956 (Miss. 1988); *Bell v. City of Bay St. Louis*, 467 So. 2d 657, 661 (Miss. 1985); *Culbreath v. Johnson*, 427 So. 2d 705, 707-708 (Miss. 1983).

## DISCUSSION OF LAW

¶9. The crux of this case is the interpretation of two paragraphs found in the separation agreement. The text of paragraph VI(1)(d) of the agreement provides that:

> The husband will pay unto his Wife, or will provide, that his employer or retirement benefits program administrator will pay unto said Wife, one-half (1/2) of his monthly retirement benefits that have acrued as of the date of this agreement and will hereafter accrue until retirement, upon the retirement of the Husband from Union Camp Corporation, his employer, or any successor employer, said one-half (1/2) of retirement payment to be made monthly and to continue until his wife remairries, or dies, whichever occurs first. The Husband further agrees to continue to contribute to his retirement fund with his employer at the same level he has contributed for the past twelve (12) months prior to the execution of this agreement. The Husband also agrees to furnish documentation to the Wife of his annual statement of earnings with said retirement account of Union Camp Corportation, or successor employer, and hereby further authorizes his employer and/or his employer's retirement fund to give acces to the Wife of any and all information concerning said retirement fund account and to execute any documents necessary to properly vest the Wife's interest in said retirement fund. . . .

¶10. The text of paragraph VI(1)(e) of the agreement provides:

> The Husband will also pay to the Wife one-half (1/2) of any and all retirement funds of any description, as they become available at retirement, to include individual retirement accounts (I.R.A.). Husband agrees to furnish Wife documentation concerning any of these accounts. . . .

¶11. Joan argues that Ronald failed to provide information concerning the Savings and Investment Plan, a 401-K account, and that the paragraphs above cover such an account. She maintains Ronald is required to convey to her one-half interest in this account at retirement.

¶12. The Holloman's intent in the execution of the property settlement agreement was to insure Joan's continuous alimony upon Ronald's retirement. From a complete reading of the settlement agreement, it would be difficult not to say that the intentions of the parties was to provide for permanent support and maintenance for Joan, whether Ronald was employed or retired. This Court, in *Cherry v. Anthony, Gibbs, Sage*, 501 So. 2d 416, 419 (Miss. 1987), stated, "It has long been the law in Mississippi that in construing particular provisions in a contract, a court will look to the document as a whole." *Id.* Here, the Hollomans have expressed their clear intent from a fair reading of the settlement agreement as a whole. Examination of the two paragraphs in question and the specific

words utilized therein, clearly show the intent to be that Joan receive one-half of Ronald's retirement benefits, whether in one account or more, and regardless of the name attached to the account. This Court, in *Newell v. Hinton*, 556 So. 2d 1037 (Miss. 1990), *citing* **Roberts v. Roberts,** 381 So. 2d 1333, 1335 (Miss. 1980), stated:

> Intent of the parties is crucial in contract interpretation. Of course, it must be understood that the words employed in a contract are "by far the best resource for ascertaining intent and assigning meaning with fairness and accuracy.

*Newell*, 556 So. 2d at 1042.

¶13. According to paragraph VI. 1. d. of the property settlement agreement, Ronald's employer's savings and investment plan constituted a retirement benefit. By any stretch of the imagination, the plan was a retirement fund of which Ronald had promised to pay "one half of any and all retirement funds of any description, as they become available at retirement. . . ." as contemplated by paragraph VI. 1. e. This Court finds that this one phrase, "of any description" alone is broad enough and sufficient to include the retirement 401-K savings plan. The chancellor erred in not finding that the Savings and Investment Plan was a retirement fund under this phrase from paragraph VI.1.e. of the property settlement agreement.

¶14. Joan attempted within two months of the divorce to establish her rights to Ronald's retirements accounts. She was advised that a Qualified Domestic Relations Order (QDRO) was necessary. Ronald only advised her of Union Camp Corporation, his employer's, retirement income plan. The QDRO was accordingly prepared, submitted to the lower court and executed on May 3, 1992.

¶15. Subsequent to the entry of the court's order, Joan discovered the plan did not contain all of Ronald's total assets accumulated toward retirement during the marriage. In fact, only $16,000 was contained in the retirement plan about which Ronald had actually told Joan. However, unbeknownst to Joan, Ronald also had a 401-K account called a Savings and Investment Plan. This account had a value of $209,000 at the end of 1993. The settlement agreement clearly covered this plan. Ronald's withholding of this vital information was in direct contradiction of the agreement. Joan's attempt to have a revised QDRO order entered incorporating the 401-K plan in conformity with the settlement agreement was opposed by Ronald. The chancellor found that Joan's request for modification failed "for want of specificity" and denied her requested relief.

¶16. The chancellor found that the disputed retirement fund was not referred to by that name by the administering company, but rather, the company referred to it as a savings and investment plan. Such reliance upon the mere "name of the account" is obviously misplaced. This Court must look to the document as a whole, examining the nature of the account, its purpose and use, as being more important as a determining factor of whether the account actually is a retirement account. Ronald's employer's description of the plan clearly indicated that the purpose of the plan was "to encourage investment for retirement." Additionally, Joan's expert witness, Eddie Powell, an attorney with a master's degree in taxation, testified that the savings plan was a retirement account under federal law. He testified that there are two types of employee benefits, welfare and pension. Pension benefits concern payments that an employee accrues and receives at retirement. He further testified that there are two basic types of plans, benefit plans and defined contribution plans, the former funded solely by the employer and the latter including employee contributions.

¶17. ERISA explains what kind of plan the savings and investment plan is under federal law. A defined contribution plan is a pension plan which provides for an individual account for each participant and for benefits based solely upon the amount contributed to the participant's account, any income, expenses, gains and losses, and any forfeitures of accounts of other participants which may be allocated to such participant's account. Powell testified that Ronald's savings and investment plan was a **defined contribution plan as defined by ERISA**. Ronald offered no proof regarding specifics of what a retirement account consists. The chancellor was thus required to rely on Joan's sole expert testimony.

¶18. Union Camp Corporation's own literature in explaining the Savings and Investment Plan, stated, "The government permits before tax savings to encourage you to put money aside for retirement." Retirement was lited as the first reason for taking a payout of the benefits.

¶19. Ronald even answered in discovery that he used the savings plan to "defer income for retirement purposes," though admittedly he claimed it was not his sole purpose. The admission by Ronald that he used the savings and investment plan for retirement purposes destroys his entire argument that such a plan is not a retirement plan. Ronald's admission alone warrants the reversal of this case, because it established that he did have a retirement purpose in the plan.

¶20. Ronald's Savings and Investment Plan was a retirement account by any definition of the term, including Ronald's own definition. The lack of the specific name of that account within the settlement agreement is of no consequence. The language of paragraph VI. 1.d. was clear that this account was contributing Ronald's earnings for deferment until retirement. When this Court considers all of this evidence, there can be no question that reversal is required. We hold that the chancellor erred in ruling that Joan's claim failed for lack of specificity in the settlement agreement.

¶21. This Court has recognized systematic contributions for a self-employed ERISA plan as a "retirement plan" enabling the chancellor to determine division of property. *Draper v. Draper*, 627 So. 2d 302 (Miss. 1993). Even the collective dissenting opinions of Justice McRae and Banks, joined by this writer, referring to the equitable split of marital assets, identified the Keogh plan of Dr. Draper as "retirement" income. A Keogh plan is a pension plan governed by ERISA. (1974) ERISA Op. Letter No. 74-1; *see also* 60A Am. Jur. 2d Pensions and Retirement § 75 at 112. *Parker v. Parker*, 641 So. 2d 1133, 1139 (Miss. 1994), is a case in which this court affirmed an award by the chancellor to Brenda Parker of 30 percent of David Parker's vested interest in his employer's profit sharing plan. In *Parker*, David Parker's "savings" or "investment" was only available to him upon his termination of services, retirement, or death. *Id.* at 1138. This court recognized that Brenda's interest in such styled "savings" or "investment" plan vested when (1) a chancellor has determined that an equitable division of the marital assets requires awarding some portion of one spouse's pension or profit sharing plan to the other spouse and (2) a QDRO is entered and accepted as qualified. *Id.* at 1139.

¶22. In the case *sub judice*, the chancellor determined that an equitable division of the marital assets required awarding half of the retirement account that contained the $16,000. Equitable division of assets has been addressed by this Court in *Ferguson v. Ferguson*, 639 So. 2d 921 (1994). The chancellor's allowance of a one-half interest in only the $16,000 account, and dissallowance of a one-half interest in the $209,000 Savings and Investment Plan is certainly far from equitable and definitely

not in keeping with the intent of the parties or the language of the settlement agreement. The parties then entered into a QDRO separation agreement which *specified* that the husband would pay the wife one-half of any and all retirement funds and that the husband would furnish information concerning these accounts. The husband agreed to this contract to pay her one-half of his retirement accounts, though he almost successfully concealed one such account under a semantic disguise, and that account just happened to contain the vast majority of Ronald's retirement funds.

¶23. Joan argues that Ronald's savings and investment plan was a retirement account by any definition of the term. This Court agrees with Joan, the savings and investment plan most definitely is a retirement account, as contemplated by the terms of the Holloman's settlement agreement. Equitable division of Ronald's retirement funds requires that the proceeds of both accounts be considered per the Holloman's agreement. This Court holds that the Union Camp Savings and Investment Plan is a retirement fund as contemplated by the ageement.

¶24. We therefore reverse, render, and remand this case with directions for the chancellor to enter the appropriate order to enforce the terms of the two paragraphs of settlement agreement upholding Joan's entitlement to one-half of Ronald's retirement benefits under both accounts, thus allowing for a more equitably division of the assets of the retirement accounts as agreed to by the parties.

¶25. **REVERSED, RENDERED, AND REMANDED FOR PROCEEDINGS CONSISTENT WITH THIS OPINION.**

**PRATHER AND SULLIVAN, P.JJ., PITTMAN, BANKS AND MILLS, JJ., CONCUR. DAN LEE, C.J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY McRAE AND ROBERTS, JJ.**


DAN LEE, CHIEF JUSTICE, DISSENTING:


¶26. This appeal proceeds against the backdrop of a facially valid property settlement agreement entered into by the parties in March of 1988, and approved by the Chancery Court of Oktibbeha County on May 8, 1989. Courts should not lightly disturb the efficacy of such instruments. Believing the chancellor was correct in his findings and that the majority today improperly imposes its will on the parties, I respectfully dissent.

¶27. After hearing testimony from the parties and an expert tax attorney in the case below, the chancellor expressed in his bench opinion that the issue before the court was the "interpretation of a contract, not determination of marital assets or equities between the parties." The chancellor determined that it was the parties themselves who determined what, in their own opinion, was an acceptable termination of their marriage and fair distribution of their marital assets. Interpreting the separation agreement as a contract, the chancellor noted that contracts are construed against the preparer; and since Joan's attorney prepared the document, any knowledge of marital assets attributed to her was imputed to her attorney. Finding that the agreement contained specific directions which provided for the payment of alimony, including yearly adjustments and provisions

for distributing bonuses, the chancellor found that the separation agreement "failed to show the specificity required to modify the Final Decree of Divorce and the Qualified Domestic Relations Order."

¶28. Appellant argues that Ronald is required to convey to her one-half of his interest in the Savings and Investment Plan. Ronald counters that this plan is not a retirement plan and that Joan is not entitled to share in it. To resolve this issue, we must look to the separation agreement and the individual accounts in question.

¶29. Expert testimony revealed at trial that both plans offered by Union Camp Corporation were covered by Section 401(k) of the Internal Revenue Code and by the Employee Retirement Income Security Act of 1974 (ERISA). As such, they each provide for deferred compensation and deferred taxation on income eligible to be placed in them. However, they are separate and distinct plans. The statutory definitions of these plans define two separate and distinct aspects of these plans. ERISA provides in Title 29 U.S.C.A. § 1002 (2)(a):

> Except as provided in Subparagraph (B), the terms "employee pension benefit plan" and "pension plan" mean any plan, fund or program which was heretofore or is hereafter established or maintained by an employer or by an employee organization, or by both, to the extent that its express terms or as a result of surrounding circumstances such plan, fund or program--
>
> (i) provides retirement income to employees, or
>
> (ii) results in a deferral of income by employees for periods of extending to the termination of covered employment or beyond, . . . .

This statutory provision distinguishes plans which provide retirement income from those that result in a deferral of income, and supports Ronald's argument that the Savings and Investment Plan is separate and distinct from his Retirement Plan. The money in Ronald's Savings and Investment Plan was subject to withdrawal at any time by Ronald, although it would be subject to a penalty upon early withdrawal, and Ronald could borrow against it.

¶30. In addition, ERISA provides specific direction to plan administrators on the assignment or alienation of benefit plans. Relevant portions of Title 29 U.S.C.A. § 1056 provide:

> (d) Assignment or alienation of plan benefits
>
> (1) Each pension plan shall provide that benefits provided under the plan may not be assigned or alienated.
>
> . . . .
>
> (3) (A) Paragraph (1) shall apply to the creation, assignment, or recognition of a right to any benefit payable with respect to a participant pursuant to a domestic relations order, except that paragraph (1) shall not apply if the order is determined to be a qualified domestic relations order. Each pension plan shall provide for the payment of benefits in accordance with the applicable requirements of any qualified domestic relations order.

(B) For purposes of this paragraph--

(i) the term "qualified domestic relations order" means a domestic relations order--

(I) which creates or recognizes the existence of an alternate payee's right to, or assigns to an alternate payee the right to, receive all or a portion of the benefits payable with respect to a participant under a plan, and

(II) with respect to which the requirements of subparagraphs (C) and (D) are met, and

(ii) the term "domestic relations order" means any judgment, decree, or order (including approval of a property settlement agreement) which--

(I) relates to the provision of child support, alimony payments, or marital property rights to a spouse, former spouse, child, or other dependent of a participant, and

(II) is made pursuant to a State domestic relations law (including a community property law).

(C) A domestic relations order meets the requirements of this subparagraph only if such order clearly specifies--

(i) the name and the last known mailing address (if any) of the participant and the name and mailing address of each alternate payee covered by the order,

(ii) the amount or percentage of the participant's benefits to be paid by the plan to each such alternate payee, or the manner in which such amount or percentage is to be determined,

(iii) the number of payments or period to which such order applies, and

(iv) each plan to which such order applies.

This provision requires the QDRO to include the specific identification of each plan within a retirement or deferred income program affected by the order. The property settlement agreement did not clearly and specifically identify Ronald's Savings and Investment plan as part of his retirement funds subject to division with Joan. The chancellor was correct in determining that the Savings and Investment Plan was not subject to the QDRO.

¶31. Joan further argues that "the intent of the settlement agreement was to provide her with a steady stream of income during the years that Ronald worked and afterward." According to a plain reading of the agreement, upon Ronald's retirement, "Joan would lose virtually all of her rights to alimony." The parties themselves determined the terms under which they would be divorced. They divided the marital property as they saw fit. Joan was fully aware of the various monies and accounts that she and Ronald had interests in at the time of her divorce, and she admitted to such knowledge at trial. She shared this information with her attorney, and she was aware of 401(k) plans. Joan's attorney prepared the settlement agreement, and there was no additional financial discovery requested of Ronald prior to her divorce from him.

¶32. It is worthwhile to note that, in the settlement agreement, Joan provided specific directions on

the matter of monthly alimony payments. She was careful to include in paragraph VI of the agreement the requirements that Ronald would make monthly payments in a fixed sum, subject to an increase of 20% of any raise in salary Ronald might receive and a provision that she would receive one-third of his annual bonus.

¶33. As written and currently interpreted, the agreement would give Joan a sum in excess of $23,379 in alimony and bonus-sharing a year, a one-half interest in the IRA currently valued in excess of $16,000, and a $100,000 life insurance policy on Ronald's life. This would be in addition to any income she might earn by working. At the time of the divorce she was not employed.

¶34. The chancellor was correct in holding that contract law governs this matter. "A true and genuine property settlement is no different from any other contract." *East v. East*, 493 So. 2d 927, 932 (Miss. 1986). *See also **Roberts v. Roberts***, 381 So. 2d 1333 (Miss. 1980). Regarding the nature of the matter before the court, the chancellor noted from the bench, "[b]eing a contract and presented to this Court for enforcement, there are certain rules of contract law that are applicable, the least of which is not that in construction, contracts will be construed more severely against the preparer." The chancellor found that Joan was represented by her attorney at all pertinent times, that she acknowledged that she was aware of federal law regarding employer retirement funds, and that she had knowledge of the IRA, Retirement plan and the Savings and Investment plan before the time of the divorce. At the end of the trial, the chancellor concluded that, "[t]he parties had full knowledge at the time of the preparation and entry of their separation agreement and are bound by the clear reading thereof."

¶35. In this second marriage, Ronald was married to Joan for only four days before they separated. The parties acted from informed positions and voluntarily entered into their settlement agreement. Both parties were represented by counsel. It is not equitable to expect such a division of assets after such a short marriage.

¶36. It is my opinion that the chancellor's findings are supported by the evidence presented in the record and that the chancellor correctly interpreted the settlement agreement under contract law. Accordingly, I respectfully dissent.

**McRAE AND ROBERTS, JJ., JOIN THIS OPINION.**