# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

October 26, 2011

No. 11-60230
Summary Calendar

Lyle W. Cayce
Clerk

TIME INSURANCE COMPANY,

Plaintiff-Appellee

v.

ESTATE OF LARRYE J. WHITE, also known as Larrye J. White;
PATSY WHITE,

Defendants-Appellants

Appeal from the United States District Court
for the Southern District of Mississippi
Case No. 1:08-CV-16-HSO-JMR

Before BENAVIDES, STEWART, and CLEMENT, Circuit Judges.

PER CURIAM:[*]

Defendants-Appellants, Patsy White and the estate of her deceased husband, Larrye J. White, appeal the district court's grant of summary judgment and entry of declaratory judgment in favor of Plaintiff-Appellee, Time Insurance Co. ("Time"), with respect to its obligations under a health insurance policy. As

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 11-60230

there is no genuine issue as to any material fact, and as the insurance policy is unambiguous, we AFFIRM the district court's judgment.

## I.

In May 2005, Larrye J. and Patsy White ("the Whites") applied for a health insurance policy from Time. In support of its motion for summary judgment, Time produced an application signed by the Whites, dated May 25, 2005, which Time received via facsimile and maintained in its electronic records. The first page of the application reflects a yearly maximum outpatient benefit of $2,500 and a maximum annual benefit of $100,000. At the top of each of the sequentially-numbered seven pages of the faxed application is the Whites' fax machine number. Although Larrye White acknowledged in his deposition that he signed the application as reflected in Time's records, the Whites' dispute that the policy they applied for contained the $2,500 yearly maximum outpatient benefit.

After submitting their application, the Whites completed a medical history review. Based upon the results of the review, Time awarded insurance coverage to the Whites, contingent upon their agreement to certain exclusions in coverage. Specifically, Time excluded treatment for Larrye White's allergies and Patsy White's asthma, and increased the monthly premium. On June 7, 2005, the Whites formally agreed to these changes by signing special exception riders to the insurance policy, which were faxed to Time. The riders also reflected policy certificate number 0058461251.

On June 15, 2005, Time sent the Whites' insurance agent, Albert W. Small, a copy of their health insurance policy, certificate number 0058461251, and an acceptance of offer and attestation form for them to sign. The policy reflected a calendar year maximum benefit of $100,000 for each insured, and a calendar year maximum benefit for outpatient services of $2,500 for each

2

No. 11-60230

insured. The policy also provided a 10-day right to examine; if the insureds were unsatisfied, all premiums would be returned and all coverage would be void.

On July 21, 2005, Patsy White called Time because she was concerned that her failure to return the acceptance of offer form might result in a lapse in coverage. At the beginning of the call, Patsy was prompted to provide the policy number, and she recited 0058461251-M, as reflected in the packet delivered by Time to Small. The customer service representative, Precious Crowell, assured Patsy that she and her husband were covered, and Patsy agreed to fax the acceptance of offer form to Time. On July 27, 2005, the Whites submitted the signed acceptance of offer form, dated June 20, 2005, which referenced policy number 0058461251.

On August 29, 2005, the Whites' personal belongings, including their copy of the insurance policy, were destroyed in Hurricane Katrina. In November 2006, Larrye White was diagnosed with cancer. He received outpatient chemotherapy treatments, and Time refused to cover expenses beyond the $2,500 yearly cap for outpatient services as reflected in the policy. On October 22, 2007, Patsy White wrote a letter to Small, stating that the Whites needed to upgrade the insurance policy beyond the present outpatient limits.

In support of their position that policy number 0058461251 is not the policy they agreed to, the Whites rely on Small's affidavit, in which he asserted that the policy issued to the Whites did not comply with the application he submitted to Time.

On January 16, 2008, Time brought this action, seeking a declaration that it is not obligated to pay benefits for medical treatments exceeding the $2,500 maximum yearly benefit for outpatient services. On December 10, 2008, the district court granted Time's motion for judgment on the pleadings, which was appealed. On December 21, 2009, a panel of this court vacated the judgment on the pleadings as a premature disposition of the case, and remanded for further

No. 11-60230

proceedings.    On March 16, 2010, Larrye White died, and his estate was substituted as a defendant.

On March 17, 2011, after voluminous discovery, the district court granted Time's motion for summary judgment, and rendered a declaratory judgment in Time's favor as requested in the complaint.  Appellants timely appealed.

## II.

### A.

This court reviews a district court's grant of summary judgment de novo, applying the same standards as the trial court.  *See Urbano v. Cont'l Airlines, Inc.*, 138 F.3d 204, 205 (5th Cir. 1998).  Summary judgment is proper if the evidence shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.  *Kee v. City of Rowlett*, 247 F.3d 206, 210 (5th Cir. 2001).  "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.    Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  The nonmoving party "must identify specific evidence in the record and articulate the manner in which that evidence supports that party's claim." *Johnson v. Deep East Tex. Reg'l Narcotics Trafficking Task Force*, 379 F.3d 293, 308 (5th Cir.2004).  The identified evidence "must be sufficient to sustain a finding in favor of the nonmovant on all issues as to which the nonmovant would bear the burden of proof at trial."  *Id.*  The Court views all evidence in the light most favorable to the non-moving party and draws all reasonable  inferences in that party's favor.  *Crawford v. Formosa Plastics Corp.*, 234 F.3d 899, 902 (5th Cir. 2000).

### B.

The parties agree that Mississippi law governs this diversity case.  Under Mississippi law, "[t]he burden of proving coverage rests with the insured."

No. 11-60230

*Architex Ass'n, Inc. v. Scottsdale Ins. Co.*, 27 So. 3d 1148, 1157 (Miss. 2010); *see also S. Life & Health Ins. Co. v. Kemp*, 300 So. 2d 782, 785 (Miss. 1974) ("The burden rested upon the beneficiary to establish by some proof that the death of the insured occurred under circumstances for which the policy provided coverage.").

"[I]nsurance policies are contracts, and their construction and interpretation is according to the same rules which govern other contracts." *Provident Life and Acc. Ins. Co. v. Goel*, 274 F.3d 984, 991-92 (5th Cir. 2001) (internal quotation marks and citation omitted). "[I]f a contract is clear and unambiguous, then it must be interpreted as written." *U.S. Fid. and Guar. Co. v. Martin*, 998 So. 2d 956, 963 (Miss. 2008). "A policy must be considered as a whole, with all relevant clauses together." *Id.* "The most basic principle of contract law is that contracts must be interpreted by objective, not subjective standards. A court must effect a determination of the meaning of the language used, not the ascertainment of some possible but unexpressed intent of the parties." *Cherry v. Anthony, Gibbs, Sage*, 501 So. 2d 416, 419 (Miss. 1987). "The mere fact that the parties disagree about the meaning of a provision of a contract does not make the contract ambiguous as a matter of law." *Id.* "Parol evidence as to surrounding circumstances and intent may be brought in where the contract is ambiguous, but where . . . the contract [i]s found to be unambiguous it has no place. The parties are bound by the language of the instrument." *Id.*

"An insured, of course, has an affirmative duty to read the terms and conditions of the insurance policy." *Titan Indem. Co. v. City of Brandon*, 27 F. Supp. 2d 693, 698 (S.D. Miss. 1997) (citing *Gulf Guar. Life Ins. Co. v. Kelley*, 389 So. 2d 920, 922 (Miss. 1980)). "[I]nsureds are bound as a matter of law by the knowledge of the contents of a contract in which they entered notwithstanding whether they actually read the policy." *Stephens v. Equitable Life Assurance Soc'y*, 850 So. 2d 78, 83 (Miss. 2003). "Any alleged oral agreement . . . does not

5

No. 11-60230

have any effect on the written insurance contract." *Id.* A contracting party "will not as a general rule be heard to complain of an oral misrepresentation the error of which would have been disclosed by reading the contract." *Id.* at 82 (internal citation omitted).

"To prove the content of a writing, . . . the original writing . . . is required . . . ." Fed. R. Evid. 1002. "If data are stored in a computer or similar device, any printout or other output readable by sight, shown to reflect the data accurately, is an 'original.'" Fed. R. Evid. 1001(3). Time provided ample evidence that its copy of the insurance policy, and the faxed application, riders, and acceptance of offer form, all signed by the Whites, were maintained by its computers in the regular course of business and are inalterable. Accordingly, the documents produced by Time are originals, and are admissible to prove their contents.

Under Mississippi law, knowledge of the terms of the insurance policy is imputed to the Whites, regardless of whether they in fact read the policy. In order to challenge the applicability of policy number 0058461251, Appellants rely chiefly on the affidavit of Small, which asserts that the policy the Whites applied for differs from the policy ultimately issued. However, this affidavit fails to create a genuine issue of material fact. Small's assertions are immaterial because all parties are bound by insurance policies actually agreed upon, not by applications for insurance policies. "[A]n application for insurance is simply an offer to contract. The potential insurer is free to accept the offer as written or it may issue a policy different from the one requested in the application." *Provident*, 274 F.3d at 991-92.

In the present case, the original documents produced by Time reflect that the Whites applied for policy number 0058461251, such application clearly reflecting an outpatient maximum of $2,500 and an annual maximum of $100,000. However, even accepting as true Small's claim that the Whites applied for a different policy, the Whites remain bound by their acceptance of

6

No. 11-60230

Time's counter-offer of policy number 0058461251, as reflected in their signed and returned special exception riders and acceptance of offer form. The policy itself afforded the Whites an opportunity to read it and revoke it if it did not meet their satisfaction. Instead of reading the policy they agreed to, the Whites, after the passing of a number of years, argue that this is not the agreement they intended to reach. This case is, therefore, similar to *Zepponi v. Home Insurance Co.*, 161 So. 2d 524 (Miss. 1964), in which an insured challenged the terms of an insurance policy on the ground that he had never received a copy. The Mississippi Supreme Court ruled "as a matter of law that Insured is charged with knowledge of the terms of the policy upon which he relied for protection for nearly five years. . . . Human memory is a frail record and the fact of delivery should not rest thereon after five years." *Zepponi*, 161 So. 2d at 526. Accordingly, even if the Whites applied for a different policy in 2005, they are bound by the policy they agreed to, had a duty to read, and relied upon for protection until the time of Larrye White's illness.

Moreover, there is no genuine issue of material fact because Appellants cannot meet their burden, under Mississippi law, of proving coverage merely by relying on the unavailability of their own copy of the policy. As expressed above, pursuant to the Federal Rules of Evidence, the electronic printout of the insurance policy produced by Time is an original. In opposition to summary judgment, Appellants submitted six exemplar policies that Time also marketed at the time of the Whites' application. However, there is no evidence to establish which of these alternative policies were ever actually issued to the Whites. In this respect, this case is similar to *Harrow Products, Inc., v. Liberty Mutual Insurance Co.*, 64 F.3d 1015 (6th Cir. 1995), in which a company relied on missing policies to establish an entitlement to coverage. In that case, the Sixth Circuit ruled that the company could not meet its burden of proving coverage:

No. 11-60230

> Of course, we cannot state that a party can never prove the terms of a policy without a copy of the policy or a reasonable facsimile thereof. But the party trying to do so certainly faces a formidable burden. Here no jury could find, absent sheer speculation, the scope of coverage, the relevant notice requirements, and all of the other aspects of the policy, on which coverage often hinges.

*Harrow*, 64 F.3d at 1021. Likewise, in this case, Appellants' invitation to speculate about which policy might have been issued cannot raise a genuine issue of material fact where an original of the policy is in evidence.

## C.

Lastly, we agree with the district court that the insurance policy is not ambiguous. The benefits schedule clearly limits coverage to a $2,500 yearly maximum outpatient benefit and a $100,000 annual maximum benefit. Appellants assert that the "Covered Medical Services" section of the policy creates an ambiguity with respect to the maximum benefits. The opening paragraph of this section states that "Covered Medical Services include only Covered Charges for the services and supplies listed in this certificate. Charges are subject to all the terms, limits, and conditions of this plan." The section goes on to list twenty-four categories of medical services covered by the policy. Included in the description of twelve of these types of services, including "X-ray and laboratory services" and "Sterilization," is a phrase indicating that this type of service is limited to the outpatient calendar year maximum. Additionally, certain categories of services, such as "Wellness services" and "Physical, Speech & Occupational Therapy" are limited to maximum dollar amounts, such as fifty or five hundred dollars, in addition to the annual outpatient maximum benefit. Appellants argue that because the descriptions of the categories of "Hospital Services" and "Health Care Practitioner Services" do not include a phrase stating that coverage is limited to the annual outpatient maximum benefit, the

No. 11-60230

policy is ambiguous with respect to whether these services are limited by the maximum benefits as provided in the benefits schedule.

Upon our independent review of the policy, we determine that there is no conflict between the "Covered Medical Services" section and the policy benefits schedule. Rather, the descriptions under the "Covered Medical Services" section which specifically reference the calendar year maximum outpatient benefit only clarify that, even if such services could, in context, be characterized as inpatient services, they remain subject to the maximum outpatient benefit. For instance, an insured might receive X-ray or chiropractic services while hospitalized following a car accident. Although receiving those services while a hospital patient, under the terms of the policy, the insured's benefits would still be subject to the yearly maximum outpatient benefit.

However, "Hospital Services" and "Health Care Practitioner Services" encompass both inpatient and outpatient services. Whether particular services falling under these categories are limited to the annual maximum outpatient benefit depends on whether the services are properly characterized as inpatient or outpatient. If the services are outpatient services, then they are subject to the annual maximum outpatient benefit located in the benefits schedule. Accordingly, taking all relevant clauses together and finding no ambiguity, the contract must be enforced as written.

## III.

For the foregoing reasons, the district court's judgment is AFFIRMED.