646 So.2d 1305 (1994)
HERITAGE CABLEVISION
v.
NEW ALBANY ELECTRIC POWER SYSTEM OF the CITY OF NEW ALBANY, MISSISSIPPI.
No. 91-CA-00460.
Supreme Court of Mississippi.
December 8, 1994.
*1306 W.O. Luckett, Jr., Luckett Law Firm, Clarksdale, for appellant.
William C. Spencer, Nathan W. Kellum, Mitchell McNutt Threadgill Smith & Sams, Tupelo, for appellee.
Before HAWKINS, C.J., and JAMES L. ROBERTS, Jr. and SMITH, JJ.
HAWKINS, Chief Justice, for the Court:

STATEMENT OF THE CASE
On December 7, 1988, Mike Biffle (hereinafter "Biffle"), an employee for the appellant Heritage Cablevision (hereinafter "Heritage"), was installing cable on a pole owned by the appellee New Albany Electric Power System of the City of New Albany (hereinafter "New Albany Electric"). Charlie Huffstatler (hereinafter "Huffstatler"), an employee of New Albany Electric, had at the same time parked a pick-up truck at the top of an inclined driveway. As Huffstatler reached to open the door to the truck, the parking brake popped out, causing the truck to roll down the driveway, hit the pole and injure Biffle.
New Albany Electric filed a Complaint for Declaratory Judgement against Heritage and Biffle in the Circuit Court of Union County on March 1, 1990, asking the court to confirm the existence and validity of an indemnity agreement between the two companies. Biffle answered on March 16, 1990, by filing a Motion to Dismiss pursuant to Rule 12(b)(6) which New Albany Electric responded to on April 18, 1990, and which was granted on March 6, 1991. On April 5, 1990, Heritage responded to New Albany Electric's complaint and joined Huffstatler under Rule 14 as third-party defendant. Eight days later Huffstatler filed an Answer to Third Party Complaint and Defenses.
Heritage then filed a Motion for Summary Judgement on all issues and against all parties on June 25, 1990. New Albany Electric filed its own Motion for Summary Judgement on July 18, 1990, asserting the existence and validity of the indemnification agreement. On March 25, 1991, an order granting summary judgement for New Albany Electric and denying summary judgement for Heritage was entered by Judge Robert Kenneth Coleman in the Union County Circuit Court.
*1307 Aggrieved by this order, Heritage filed a Notice of Appeal on April 8, 1991.

FACTS
This case has its beginnings on December 7, 1988, a date which will probably never live in infamy. Mike Biffle, an employee for Heritage Cablevision, was installing cable on a pole at the lower end of an inclined driveway. A half-ton pickup truck had been parked at the upper end by Charlie Huffstatler, employee of New Albany Electric. The truck was in park and the parking brake set, but when Huffstatler reached to open the truck door the parking brake popped loose. The truck rolled down the driveway, struck the pole on which Biffle was working and knocked him to the ground, causing extensive injuries.
New Albany Electric filed a Complaint for Declaratory Judgement against Biffle and Heritage on March 1, 1990, claiming an indemnification clause between Heritage and them relieved them of liability for Biffle's injuries. Biffle, on March 16, 1990, filed a Motion to Dismiss which New Albany Electric responded to in April of 1990 and which was granted in March of 1991. On April 5, 1990, Heritage answered, contending they were not bound by this indemnification clause, that the clause was invalid or inapplicable; and further that the negligence or strict liability of a third party was the sole proximate cause of the accident and that workers' compensation was Biffle's exclusive remedy. Finally, Heritage also used this response to join Huffstatler under Rule 14 as a third-party defendant. Huffstatler filed an Answer to Third Party Complaint and Defenses on April 26, 1990.
On June 25, 1990, Heritage filed a Motion for Summary Judgement as to all contested issues and against all parties. The Motion reads:
Comes now Defendant, Heritage Cablevision, Inc. by and through counsel, Luckett Law Firm, P.A. and pursuant to Rule 56 Mississippi Rules of Civil Procedure and moves the court for a summary judgement in its favor on all issues in this cause and for grounds states that there is no genuine issue as to any material fact and that it is entitled to judgement as a matter of law.
Movant relies upon; 1) Complaint, 2) Response To Complaint and Third Party Complaint, 3) Answer to Third Party Complaint and Defenses and 4) Deposition of Charlie Huffstatler which are attached hereto as Exhibits 1, 2, 3, and 4 respectively.
About a month later New Albany Electric entered its own Motion for Summary Judgement which similarly claimed that there were no genuine issues as to any material fact, and, like their previous Complaint for Declaratory Judgement, stated that an indemnity clause existed between them and Heritage which relieved them of all liability.
The clause in question is part of a 1967 agreement between New Albany Electric and New Albany T.V. Cable, Inc., a company Heritage bought and obtained cable servicing contracts from after execution of the 1967 agreement. The clause in question reads in relevant part:
10. Licensee shall indemnify, protect, and save harmless Licensor from and against any and all claims and demands for damages to property and injury or death to persons, including payments made under Workmen's Compensation Law or under any plan for employee's disability and death benefits, which may arise out of or be caused by the erection, maintenance, presence, use or removal of said attachments or by the proximity of the respective cables, wires, apparatus and appliances of the parties hereto; or by any act of Licensee, its agents or employees, on or in the vicinity of Licensor's poles, or arising out of the negligence of Licensor as to personal injuries received or suffered by agents or employees of Licensee while they are engaged in activities authorized by this Agreement. Licensee shall carry insurance, to protect the parties hereto from and against all claims, demands, actions, judgments, costs, expenses, and liabilities of every name and nature which may arise or result directly or indirectly, from or by reason of such loss, injury or damage... .
*1308 Although Heritage was not a party to the original contract, they did utilize the licensing agreement to use the cable described therein. Furthermore, in 1982 they executed with New Albany Electric an amendment to the 1967 contract which altered the original payment plan but left the indemnity clause untouched.
Both the nature of the relationship between the old and new cable companies and the history of Heritage's conduct under the original agreement were further illuminated during the discovery process of this case. Heritage's responses to New Albany Electric's requests for admissions read as follows:
COMES NOW Defendant, Heritage Cablevision, Inc. by and through counsel, Luckett Law Firm, P.A. and responds to Plaintiff's request for admissions as follows:
REQUEST NO. 1: Admit that Heritage Cablevision was assigned the duties and obligations of New Albany T.V. Cable, Inc. provided for in the agreement between New Albany T.V. Cable, Inc. and New Albany Electric Power System of the city of New Albany, Mississippi, dated July 14, 1967, a copy of which is attached to the Complaint as Exhibit "A."
RESPONSE: Heritage Cablevision, Inc. is without sufficient knowledge or information to admit or deny the request. It has made reasonable inquiry pursuant to the dictates of Rule 36 Mississippi Rules Of Civil Procedure and can find no documentary evidence of any "assignment".
REQUEST NO. 2: Admit that Heritage Cablevision, since it began servicing the New Albany area, has recognized and adhered to the agreement dated July 14, 1967, a copy of which is attached to the Complaint as Exhibit "A."
RESPONSE: Admitted.
REQUEST NO. 3: Admit that Heritage Cablevision had used the poles provided by City of New Albany pursuant to the agreement dated July 14, 1967, a copy of which is attached to the Complaint as Exhibit "A," in servicing cable in the City of New Albany.
RESPONSE: Admitted with the qualification that the only use by Heritage Cablevision, Inc. of the "poles" has been since Heritage purchased the cable television system from New Albany T.V. Cable, Inc.
REQUEST NO. 4: Admit that the agreement between Heritage Cablevision and New Albany Electric Department dated September 20, 1982, a copy of which is attached to Complaint as Exhibit "A," acted as a supplement of the agreement dated July 14, 1967, a copy of which is attached to Complaint as Exhibit "A."
RESPONSE: Denied. The 1982 agreement is an amendment to the 1967 agreement not a supplement. The documents speak for themselves as to what is intended by the words contained therein.
Heritage's responses to New Albany's interrogatories also prove to be useful:
COMES NOW Defendant, Heritage Cablevision, Inc. and responds to Plaintiff's first set of interrogatories as follows:
INTERROGATORY NO. 1: Please describe the process in which Heritage Cablevision obtained the cable servicing contracts from New Albany T.V. Cable, Inc.
RESPONSE: Heritage came to learn that the New Albany system was for sale and it purchased the then existing system.
INTERROGATORY NO. 2: What contractual relationship, if any, existed between Heritage Cablevision and the Electric Department of the City of New Albany on December 7, 1988?
RESPONSE: Heritage Cablevision, Inc. is of the position that any and all contractual relationships that existed between Heritage Cablevision, Inc. and the City of New Albany on December 7, 1988, would be the 1967 Agreement attached to the Complaint and the 1982 Amendment attached to the Complaint.
INTERROGATORY NO. 3: Identify and describe any contracts, duties or obligations regarding the City of New Albany assigned to Heritage Cablevision from New Albany T.V. Cable, Inc.
RESPONSE: Heritage is of the opinion that its contracts, duties, and obligations regarding the City of New Albany are contained in the 1967 Agreement and the *1309 1982 Amendment thereto attached to the Complaint. It knows of no specific assignment with respect to said contracts.
INTERROGATORY NO. 4: What is the basis of Defendant, Heritage Cablevision's contention that it is a party to the supplemental contract dated September 20, 1982, attached to the Complaint as Exhibit "A," and not a party to the original contract dated July 14, 1967, attached to the Complaint as Exhibit "A."
RESPONSE: Heritage states that it is a party to the supplemental contract dated September 20, 1982, because it executed said Amendment. It is of the position that it is not a party to the contract dated July 14, 1967, attached to the Complaint as Exhibit A because it did not execute said contract.
After considering the evidence and the parties' memoranda of law, Judge Robert Kenneth Coleman of the Union County Circuit Court granted summary judgement on March 25, 1991, for New Albany Electric and denied it for Heritage Cablevision:
IT IS THEREFORE, ORDERED, THAT:
1. The motion for summary judgement filed by Heritage Cablevision, Inc. is hereby denied.
2. The motion for summary judgement filed by the New Albany Electric Power System of the City of New Albany, Mississippi is hereby sustained and the Indemnity Agreement entered into between New Albany Electric Power System of the City of New Albany, Mississippi and Heritage Cablevision, Inc. is valid and in accordance with Paragraph X of said agreement, Heritage Cablevision shall indemnify, protect and save harmless New Albany Electric Power System of the City of New Albany, Mississippi, from and against any and all claims and demands for damages to the injuries received by Mike Biffle on December 7, 1988.
Aggrieved by this order, Heritage filed a Notice of Appeal on April 8, 1991.

LAW
In reviewing a Rule 56 Summary Judgement one should bear in mind that "summary judgement is not a substitute for a trial on disputed fact issues; it permits a court to render judgement on the law when no disputed facts are found to exist. The court is not the factfinder on summary judgement, but may only determine if issues are to be tried." Smith v. H.C. Bailey Companies, 477 So.2d 224 (Miss. 1985). Both parties in this case professed that there were no disputed material facts and an examination of the record shows this to be true. Therefore, in at least this respect, an award of summary judgement is appropriate.
As there are no factual matters in contention, all that remains for this court to decide are issues of law. The procedure for making such a determination is well known:
This court conducts de novo review of a lower court's grant of summary judgement. Pearl River County Bd. of Supervisors v. South East Collections Agency, Inc., 459 So.2d 783, 785 (Miss. 1984). "The general standard that an appellate court applies in reviewing the grant or denial of a summary judgment motion is the same as that employed by the trial court initially under Rule 56(c)." 10 Wright, Miller & Kane, Federal Practice and Procedure § 2716 (1983 and Supp. 1988).
The law governing the grant or denial of a motion for summary judgment is familiar and well established. Fruchter v. Lynch Oil Co., 522 So.2d 195, 198 (Miss. 1988). In Dennis v. Searle, 457 So.2d 941 (Miss. 1984), we explained:
The trial court must review carefully all of the evidentiary matters before it  admissions in pleadings, answers to interrogatories, depositions, affidavits, etc. The evidence must be viewed in the light most favorable to the party against whom the motion has been made. If in this view the moving party is entitled to judgement as a matter of law, summary judgment should forthwith be entered in his favor. Otherwise the motion should be denied. 457 So.2d at 944.
Short v. Columbus Rubber and Gasket Co., 535 So.2d 61 (Miss. 1988).
*1310 We now address the issues presented in this particular case.

I. WHETHER THE NEGLIGENCE AND/OR STRICT LIABILITY OF A THIRD PARTY WAS THE SOLE PROXIMATE CAUSE OR THE CONTRIBUTING PROXIMATE CAUSE OF THE UNDERLYING ACCIDENT.
A reading of New Albany Electric's Complaint for Declaratory Judgment, their Motion for Summary Judgement and the order granting the summary judgment reveal that they are concerned almost exclusively with the validity and applicability of the 1967 indemnification clause. The actions of a third party and whether they somehow caused the injury in question are irrelevant in determining the legal question of the validity of this clause. Furthermore, although Heritage does briefly raise this issue on appeal, they never point to any facts or law which would enable this Court to fully address this issue. We therefore, find no merit to this contention.

II. WHETHER HERITAGE CABLEVISION IS BOUND BY THE 1967 AGREEMENT BETWEEN NEW ALBANY ELECTRIC AND NEW ALBANY T.V. CABLE, INC.
Heritage claims that as it was not a party to the original 1967 contract, it should not be bound by the indemnity clause contained therein. A determination of this issue is hampered somewhat by the lack of documentation in the record regarding the sale of New Albany T.V. Cable, Inc. to Heritage Cablevision. However, ample evidence exists elsewhere.
First, Heritage acknowledged during discovery that it has been using the television cable attached to New Albany Electric's poles under the 1967 agreement since it bought New Albany T.V. Cable. They cannot pick and chose the provisions upon which to be bound.
§ 59 Acceptance of benefits
Estoppel is frequently based upon the acceptance and retention, by one having knowledge or notice of the facts, of benefits from a transaction, contract, instrument, regulation, or statute which he might have rejected or contested. This doctrine is obviously a branch of the rule against assuming inconsistent positions, and it has been said that such cases are referable, when no fraud either actual or constructive is involved, to the principles of election or ratification, rather than to those of equitable estoppel. The result produced, however, is clearly the same, and the distinction is not usually made. Such estoppel operates to prevent the party thus benefitted from questioning the validity and effectiveness of the matter or transaction insofar as it imposes a liability or restriction upon him, or, in other words, it precludes one who accepts the benefits from repudiating the accompanying or resulting obligation. And the principle of estoppel by the acceptance of benefits may operate to prevent a party from profiting by his own wrong. 28 Am.Jur.2d Estoppel and Waiver § 59 (1966). (Emphasis added.)
Heritage cannot accept the benefit under this contract and also repudiate its obligations. Whether they actually signed the original 1967 document is irrelevant now that they have been operating under it for so many years. Equity obliges Heritage to acknowledge that they are bound by the agreement.
Moreover, further evidence of Heritage's past willingness to accept the original contract can be seen in the 1982 agreement between them and New Albany Electric. This agreement amended the payment terms of Article 8 in the 1967 contract and is signed by representatives of both Heritage and New Albany Electric. It reads in part, "The New Albany Electric Department and Heritage Cablevision agree that the following amendment shall be a part of the agreement between the parties dated August 2, 1967." Clearly this bound Heritage to the 1967 contract.
Finally, Heritage conceded during discovery that they had recognized and adhered to the 1967 agreement since they started servicing the New Albany area. They also stated that "Heritage Cablevision, Inc. is of the position that any and all contractual relationships *1311 that existed between Heritage Cablevision, Inc. and the City of New Albany on December 7, 1988, would be the 1967 Agreement attached to the Complaint and the 1982 Amendment attached to the Complaint" and further that "Heritage is of the opinion that its contracts, duties and obligations regarding the City of New Albany are contained in the 1967 Agreement and the 1982 Amendment thereto attached to the complaint." These words constitute a specific acknowledgement by Heritage that the 1967 contract contains its duties and obligations to New Albany Electric. Under the circumstances, their claim that no such duties and obligations exist is incomprehensible.
Whether by principles of equitable estoppel, the 1982 amendment, or Heritage's own admissions, it is clear that Heritage should be and is bound by the 1967 agreement between New Albany Electric and New Albany T.V. Cable.

III. WHETHER THE INDEMNIFICATION CLAUSE IN THE 1967 AGREEMENT IS VOID AND UNENFORCEABLE UNDER MISS. CODE ANN. § 31-5-41.
Miss. Code Ann. § 31-5-41, the statute which Heritage claims renders the indemnity clause void, reads:
"Hold harmless" clauses in construction contracts are void; exceptions.
With respect to all public or private contracts or agreements, for the construction, alteration, repair or maintenance of buildings, structures, highway bridges, viaducts, water, sewer, or gas distribution systems, or other work dealing with construction, or for any moving, demolition or excavation connected therewith, every covenant, promise, and/or agreement contained therein to indemnify or hold harmless another person from that person's own negligence is void as against public policy and wholly unenforceable.
This section does not apply to construction bonds or insurance contracts or agreements.
Miss. Code Ann. § 31-5-41.
Although a straightforward reading of this statute would lead one to think that it only applied to construction contracts, Heritage in its brief quotes several cases and attempts to perform elaborate legal gymnastics to prove otherwise. As this Court has not yet decided this issue, Heritage is forced to rely on the persuasive, yet non-binding holdings of our cousins in the Federal system.
One such case is based on a fact pattern quite similar to case at bar. Lorenzen v. South Central Bell Telephone Co., 546 F. Supp. 694 (S.D.Miss. 1982), aff'd 701 F.2d 408 (5th Cir.1983), involves a licensing agreement between South Central Bell and Clearview Cable of Clinton, Inc., which allowed Clearview to use the phone company's poles to provide cable television in the Clinton area. This contract also had an indemnification agreement much like the one in the 1967 contract in the present case and, although South Central Bell and its employees were not directly involved, an employee of the cable company was injured while working on a pole. The phone company paid Lorenzen, the injured cable employee, and moved for summary judgement against Clearview based on the indemnification contract. In response to Clearview's attempt to block the enforcement of the indemnity agreement by interposing § 31-5-41, the United States District Court for the Southern District of Mississippi wrote:
The Court concludes that said section does not bar South Central Bell's maintenance of its present claim for indemnity.
Here we have no construction contract and Clearview has not made an agreement to construct anything.
Clearview, by the "License Agreement For Pole Attachments" which is at issue merely obtained a license, rather than agreeing to construct anything....
Simply put: this License Agreement was not a "construction contract" within the meaning and prohibition of § 31-5-41. Therefore, that section does not bar South Central Bell from enforcing the indemnity provisions of its contract with Clearview.
Id. at 697.
Heritage tries to distinguish Lorenzen from the case at bar by pointing out that the injury in question happened under different *1312 circumstances: "(1) the injuries arose directly out of the installation of Clearview's cable; (2) the negligence, allowing the defective pole to exist, occurred at the site of Clearview's cable connection; and (3) Clearview and its employee had some control of the workplace." However, these distinctions are just details concerning the nature of the accident. They have little bearing on the essence of the underlying contract and do nothing to prove that the 1967 licensing agreement is of the same character as a § 31-5-41 construction contract.
Heritage's protestations to the contrary, the 1967 contract is a licensing agreement and not a construction contract. Therefore, § 31-5-41 does not apply to prevent the enforcement of the indemnification clause contained therein.

IV. WHETHER THE INDEMNIFICATION CLAUSE COVERS AN INCIDENT SUCH AS THIS ONE.
This issue is largely a matter of contract interpretation. The 1967 indemnification clause states that the licensee cable company shall indemnify licensor New Albany Electric against, among other things, claims arising from, "any act of Licensee, its agents or employees, on or in the vicinity of Licensor's poles, or arising out of the negligence of Licensor as to personal injuries received or suffered by agents or employees of Licensee while they are engaged in activities authorized by this agreement." (Emphasis added.)
The claim in this case is based on an injury which arose out of the licensor's negligence and was suffered by an employee of the licensee while he was engaged in activities authorized by the agreement.[1] If one were to follow the words of the contract alone, one would be forced to conclude that the indemnity clause applies. Heritage, however, claims that one must look beyond the words of the contract here to determine the true intent of the parties. If one does so, claims Heritage, it becomes apparent that this type of injury was never meant to be covered by this agreement.
Heritage's assertions that the intent of the parties should be used to determine the true meaning of this contract are correct. "In interpreting the writing at issue, the cardinal rule of construction is to give effect to the mutual intentions of the parties." Kight v. Sheppard Bldg. Supply, Inc. 537 So.2d 1355, 1359 (Miss. 1989). "The first rule of contract interpretation is to give effect to the intent of the parties." Estate of Hensley v. Estate of Hensley, 524 So.2d 325, 327 (Miss. 1988). Heritage errs, however, in proposing that this court look beyond the clear language of this contract to determine what this intent is.
Our concern is not nearly so much what the parties may have intended as it is with what they said, for the words employed are by far the best resource for ascertaining intent and assigning meaning with fairness and accuracy. This is particularly so where... one of the parties ... was not a party to the original contract.
UHS-Qualicare v. Gulf Coast Community Hospital, 525 So.2d 746, 754 (Miss. 1987).
*1313 This rule of law is well established. "In contract construction cases our focus is upon the objective fact  the language of the contract. We are concerned with what the contracting parties have said to each other, not some secret thought of one not communicated to the other." Osborne v. Bullins, 549 So.2d 1337, 1339 (Miss. 1989). "The most basic principle of contract law is that contracts must be interpreted by objective, not subjective standards. A court must effect `a determination of the meaning of the language used, not the ascertainment of some possible but unexpressed intent of the parties.'" Cherry v. Anthony, Gibbs, Sage, 501 So.2d 416, 419 (Miss. 1987) (quoting Hunt v. Triplex Safety Glass Co., 60 F.2d 92, 94 (6th Cir.1932)).
Only if the contract is unclear or ambiguous can a court go beyond the text to determine the parties' true intent. This rule is well elucidated in the Cherry case. "Parol evidence as to surrounding circumstances and intent may be brought in where the contract is ambiguous, but where, as here, the contract was found to be unambiguous it has no place. The parties are bound by the language of the instrument." Id. Cherry also states that "the mere fact that the parties disagree about the meaning of a contract does not make the contract ambiguous as a matter of law." Id. A reading of the clause in question reveals no such ambiguity, nor does Heritage cite one.
Heritage also asks this court to invalidate this clause as violative of public policy. According to Cappaert v. Junker, 413 So.2d 378 (Miss. 1982):
In determining whether contracts should be invalidated on the ground that they violate public policy, we have held that this should not be done unless the contract is prohibited by the Constitution, a statute, or condemned by some decision of the courts construing the subject matter. This was expressed in State ex rel Knox v. Hines Lbr. Co., 150 Miss. 1, 115 So. 598 (1928), in the following language:
The power to invalidate contracts or agreements on the ground that they violate public policy is far reaching and easily abused, and this court is committed to the doctrine that the public policy of the state must be found in its constitution and statutes, "and when they have not directly spoken, then in the decisions of the courts and the constant practice of the government officials." U.S. v. Trans-Missouri Freight Ass'n, 166 U.S. [290 at] 340, 17 S.Ct. [540 at] 559, 41 L.Ed. 1007 [1897].
Cappaert at 380.
Heritage does not proffer any statute, constitution, or case that this clause actually violates. They do, however, cite Butler v. United States, 726 F.2d 1057 (5th Cir.1984), as a case in which an indemnity clause was overturned for public policy reasons. Its use here is inappropriate. In Butler the indemnitee actively prevented the indemnitor from making an accident site safer. The public policy justification in that case is quite clear  measures to increase public safety should be encouraged, not prevented. Furthermore, it is wrong to hold an indemnitor liable to an indemnitee when the indemnitee did not allow him to stop the injury. There is no such intentional conduct here on the part of New Albany Electric against Heritage. Because of this, and because of the lack of any other possible public policy justifications, this court should not, on this basis, invalidate this clause.
It is quite possible that when this clause was agreed to the parties were not contemplating this particular type of accident. Nevertheless, this Court cannot reach back in time to read the parties' minds. The law allows the Court to look no further than the unambiguous written agreement between the two companies. With our vision so directed, our only choice under the law is to enforce the clause as written and find that Heritage Cablevision is indemnified to New Albany Electric.

V. WHETHER WORKER'S COMPENSATION LAWS PROVIDE THIS INJURED PARTY HIS EXCLUSIVE REMEDY.
The exclusivity provision of the Mississippi's Worker's Compensation Act is found at 71-3-9 of the Mississippi Code Annotated:

*1314 The liability of an employer to pay compensation shall be exclusive and in place of all other liability of such employer to the employee, his legal representative, husband or wife, parent, dependents, next-of-kin, and anyone otherwise entitled to recover damages at common law or otherwise from such employer on account of such injury or death, except that if an employer fails to secure payment of compensation as required by this chapter, an injured employee, or his legal representative in case death results from the injury, may elect to claim compensation under this chapter, or to maintain an action at law for damages on account of such injury or death. In such action the defendant may not plead as a defense that the injury was caused by the negligence of a fellow servant, nor that the employee assumed the risk of his employment, nor that the injury was due to the contributory negligence of the employee.
Miss. Code Ann. § 71-3-9.
The existence of a contract for indemnity, however, changes the applicability of the exclusiveness statute. Although this court has not ruled specifically in this area, the aforementioned federal Lorenzen case addresses this issue:
The existence of the express indemnity agreement between Clearview and South Central Bell takes this case outside the prohibition of § 71-3-9, Mississippi Code of 1972, Annotated and brings this case within the majority rule recognized in Anno., 100 ALR.3rd 356; and Ball v. Oregon Erecting Co., 273 Or. 179, 539 P.2d 1059, 1061-63 (1975), that workmen's compensation acts do not bar a claim for indemnity by the third-party from the employer when that claim is based on an express contract of indemnity.
Lorenzen, 546 F. Supp. at 696.
The Mississippi Worker's Compensation Act is intended to benefit employees and guarantee that they will be remunerated if injured during the course of employment. Mississippi Code Annotated § 71-3-1 reads in part:
Citation and Purpose.
This chapter shall be known and cited as "Worker's Compensation Law," and shall be administered by the workers' compensation commission, hereinafter referred to as the "commission," cooperating with other state and federal authorities for the prevention of injuries and occupational diseases to workers and, in event of injury or occupational disease, their rehabilitation or restoration to health and vocational opportunity... .
Miss. Code Ann. § 71-3-1.
The enforcing of a freely entered into indemnity clause in no way impugns the beneficent purposes of the statute. Although such an agreement may alter who ultimately pays when an employee is injured, the employee will still be compensated. Because of this, the 1967 indemnity clause can fairly be said in this case to void the effects of the worker's compensation exclusivity statute and to allow a claim for indemnification.
After reviewing the record before us in the light most favorable for the non-movant Heritage Cablevision, it is clear that the movant New Albany Electric is entitled to summary judgment on the issue of the validity and applicability of the indemnity clause. Although Heritage was not one of the makers of the 1967 licensing agreement which contains the indemnity clause, it is now bound by that agreement under principles of equity and equitable estoppel and by its own admission that the agreement contains its duties and obligations to New Albany Electric. Furthermore, Miss. Code Ann. § 31-5-41 does not prevent the enforcement of this clause as § 31-5-41 applies only to construction contracts and the 1967 contract here being considered is a licensing agreement.
In addition, a reading of the plain language of the indemnity clause shows that it is meant to cover an accident such as the one which befell Biffle. Moreover, no ambiguity exists which would allow this court to look beyond the contract's plain words to examine parol evidence. Finally, as the freely entered into indemnification clause takes this case outside of the workers' compensation exclusivity statute, the workers' compensation act will not bar a claim for indemnity under the indemnification clause.
*1315 The summary judgment for New Albany Electric and denying summary judgment for Heritage Cablevision is affirmed.
AFFIRMED.
DAN M. LEE and PRATHER, P.JJ., and SULLIVAN, PITTMAN, BANKS, McRAE, JAMES L. ROBERTS, Jr. and SMITH, JJ., concur.
NOTES
[1] Not only was Biffle engaged in an activity which was authorized by the agreement, he was engaged in the activity which was the very purpose of the agreement. The preamble to the contract reads:

WHEREAS, Licensee proposes to furnish community antenna television distribution service for delivery via cable in the city of New Albany, to its customers and will need to erect and maintain aerial cables, wires, and associated appliances throughout the area to be served and desires to attach such cables, wires and appliances to poles of Licensor; and to attach such cables, wires and appliances to poles of Licensor; and
WHEREAS, said service which Licensee proposes to offer the public can only be provided through local distribution facilities using public and private rights-of-way, which facilities are not available to Licensee except by attachment of its cables, wires, and appliances to Licensor's poles or by its own construction of duplicate pole lines, and
WHEREAS, Licensor is willing to permit, to the extent that it may lawfully do so, the attachment of said cables, wires and appliances to its poles for the purposes proposed by Licensee where, in its judgement, such attachments will not interfere with its own service requirements, including considerations of economy and safety.
At the time of the accident, Biffle was attaching cable to New Albany Electric's poles, exactly what the contract was designed to make possible.