# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 96-CA-00595-SCT

*GEORGE ANGLADO, JR., GLORIA ANGLADO, JAMES E. BAILEY, JR., BILLIE JEAN BAILEY, EMMETT B. BONEWITZ, MARTHA L. BONEWITZ, HENRY DAVIS, EVELYN DAVIS, CATHERINE SUZANNE DRUMMOND, JOHN R. FAYARD, JR., JOHN R. FAYARD, SR., ALICE FERRILL, HARL HICKS, BERT D.J. LANDRY, BOYCE LANDRY, DORIS LANDRY, MONA LISA LANDRY, JERRY LEE, WILLIAM F. McDONNELL, JR., WILLIAM MOORE, LULA MOORE, JOYCE MUSE, ANDREW J. OVERMEYER, BERNICE B. OVERMEYER, CARL PREHODA, LINDA PREHODA, ROBERT G. RANDOLPH, JOANN T. RANDOLPH, FRANCIS W. TOON, NORMA K. TOON, BARNEY J. VARNADO, MAX T. WALTERS, SR., AND BRENDA L. WALTERS, DAVID ADRIAN WARREN, AND CATHERINE RANDELL WEST*

*v.*

*LEAF RIVER FOREST PRODUCTS, INC., LEAF RIVER CORPORATION, GREAT NORTHERN NEKOOSA CORPORATION, GEORGIA-PACIFIC CORPORATION, WARREN RICHARDSON AND ACKER S. SMITH*

| | |
|---|---|
| DATE OF JUDGMENT: | 05/03/96 |
| TRIAL JUDGE: | HON. JERRY OWEN TERRY SR. |
| COURT FROM WHICH APPEALED: | HARRISON COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANTS: | ROBERT H. TYLER |
| | JOHN I. DONALDSON |
| ATTORNEYS FOR APPELLEES: | JAMES H. HEIDELBERG |
| | W. WAYNE DRINKWATER, JR. |
| NATURE OF THE CASE: | CIVIL - PROPERTY DAMAGE |
| DISPOSITION: | AFFIRMED - 6/4/98 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | 6/25/98 |

**EN BANC.**

**BANKS, JUSTICE, FOR THE COURT:**

¶1. The defendants in the case below were granted judgment on the pleadings and summary judgment by the circuit court. The plaintiffs appeal the summary judgment portion of that ruling. We conclude that a supporting affidavit which was not submitted with the defendants' first summary judgment motion was nevertheless properly submitted in their second motion. Moreover, in order to establish a claim for common law trespass or nuisance, the plaintiffs must present sufficient evidence not only that their properties were exposed to chemicals but also that those chemicals came from the defendants' pulp mill. Because they failed to show evidence meeting this burden, we affirm the grant of summary judgment.

**I.**

¶2. A joint Complaint was filed in this tort action in the First Judicial District of the Circuit Court of Harrison County, Mississippi, on July 23, 1992. The plaintiffs are thirty-five riparian owners of twenty-three parcels of land that abut or adjoin Poticaw Bayou and/or the West Pascagoula River in Jackson County, Mississippi (Anglado Plaintiffs). The named defendants are Leaf River Forest Products (LRFP), Leaf River Corporation (LRC), Great Northern Nekoosa Corporation (GNNC), Georgia-Pacific Corporation (Georgia-Pacific), Warren Richardson and Acker Smith (all defendants collectively referred to as the "Leaf River Defendants").[1] The Leaf River Defendants filed a joint Answer on August 26, 1992. Since 1984, LRFP has operated a pulp mill on the Leaf River near New Augusta in Perry County, Mississippi, approximately one hundred river miles upstream from the Anglado Plaintiffs' properties. The mill processes timber into market pulp and discharges treated wastewater, known as "effluent," into the Leaf River pursuant to a permit issued by the Mississippi Department of Environmental Quality (DEQ).[2]

¶3. In their initial joint Complaint, the Anglado Plaintiffs alleged that they and their properties were exposed to 2,3,7,8-tetrachlorodibenzo-p-dioxin (TCDD) and other chemicals which were discharged by the mill into the Leaf River. None of the plaintiffs had been diagnosed with any physical disease or medically cognizable mental illness. Nevertheless, they sought recovery for increased risk of future disease, for emotional distress arising from a fear of future disease, and for medical monitoring. The plaintiffs also sought recovery for diminished property values, for loss of use and enjoyment of their properties, and fraud. They also made claims for punitive damages.

¶4. On December 21, 1993, the Leaf River Defendants filed two separate dispositive motions. One of the motions sought judgment on the pleadings, or in the alternative for summary judgment, on the plaintiffs' claims for possible future disease, medical monitoring and emotional distress based on fear of disease. The other motion sought summary judgment based on the plaintiffs' lack of competent evidence of exposure. The primary basis of this motion was that the Anglado Plaintiffs could not maintain their claims without objective proof that their persons or properties had been exposed to TCDD. Since no such proof of exposure existed, the defendants' asserted that they were entitled to

summary judgment.[3] A hearing on the defendants' motions was scheduled for February 14, 1994.

¶5. On February 1, 1994, the Anglado Plaintiffs were granted a continuance of the hearing on the defendants' motions. The plaintiffs then engaged Athena Technology, Inc. to collect and analyze sediment samples from Poticaw Bayou and the Pascagoula River. Athena Technology, in turn, retained Triangle Laboratories of RTP, Inc. to conduct the analysis of the samples to determine the presence of dioxin. The test results of these sediment analyses were submitted as an exhibit to the Plaintiffs' Opposition to Defendants' Motions for Summary Judgment. The plaintiffs also submitted the affidavit of Dr. Arthur Hume, who reviewed the test results. Dr. Hume testified that the sample sediments contained varying levels of dioxin, including TCDD, and stated that "use and enjoyment of the Plaintiffs' properties and the River by any of the Plaintiffs would result in some level of exposure to dioxin."[4]

¶6. On March 23, 1994, approximately two weeks after the plaintiffs provided the test results and affidavits in opposition to the defendants' motions for summary judgment, the Leaf River Defendants served upon plaintiffs' counsel their Reply Brief. Attached to this brief were two new affidavits executed by Christoffer Rappe and Yves G. Tondeur.[5] Dr. Rappe concluded that the "low levels" of dioxins identified in the plaintiffs' soil samples are levels that one would expect to find as background levels in soil in a rural area along a river such as the Pascagoula.

¶7. As an expert on dioxin "fingerprinting" or source identification, Dr. Rappe also testified as to the source of the dioxin in the Anglado Plaintiffs' soil samples. Based on his study of the effluent data from the mill, the plaintiffs' test results and underlying data, and the distance of the plaintiffs' properties from the mill, Dr. Rappe concluded that "the Leaf River Mill is not the source of the low levels of dioxins and furans found in Plaintiffs' soil samples." Dr. Tondeur, Vice-President of Triangle Laboratories, also stated in his affidavit that "it is more likely than not that the Mill is *not* the source of the dioxins and furans in plaintiffs' samples." (emphasis in original).

¶8. On August 15, 1994, oral arguments at last were heard on the defendants' dispositive motions as well as a motion by the plaintiffs' to strike the Tondeur affidavit. At the conclusion of the hearing all motions were taken under advisement by the court. On December 29, 1994, the plaintiffs filed a motion to submit additional evidence in opposition to the defendants' pending dispositive motions. This motion sought leave to file additional affidavits contradicting the affidavits of Rappe and Tondeur. This motion was never ruled upon. Instead, on December 30, 1994, the presiding judge entered an Order denying the Leaf River Defendants' motions for summary judgment.[6]

¶9. On October 19, 1995, the Mississippi Supreme Court decided *Ferguson,* 662 So. 2d 648, and on November 17, 1995, the Leaf River Defendants filed their Second Motion of Defendants for Judgment on the Pleadings, or, in the Alternative, Summary Judgment. This motion stated that "with the exception of several recent cases to which defendants would like to draw the Court's attention, this Motion rests on the same arguments and authorities as the previous motions." The defendants included with their second summary judgment motion the affidavits of Rappe and Tondeur.

¶10. After obtaining an extension of time, the Anglado Plaintiffs filed their response on December 15, 1995. The plaintiffs conceded that the decision in *Ferguson* foreclosed recovery for their claims for increased risk of future disease, emotional distress arising from a fear of future disease, and medical monitoring. The plaintiffs also conceded that *Ferguson* foreclosed recovery of punitive damages.

Thus, the plaintiffs' only remaining claims were those for continuing toxic trespass, public and private nuisance, property damage and fraud.

¶11. On March 1, 1996, oral argument was heard on the defendants' second summary judgment motion before Judge Jerry O. Terry. During the course of this hearing plaintiffs' counsel argued that the affidavits of Rappe and Tondeur were not properly before the court because they were not attached to the original motions for summary judgment filed in December of 1993, but rather had been "submitted in rebuttal" to the plaintiffs' test results and the affidavit of Dr. Hume. Plaintiffs' counsel complained that they had never been given a chance to respond to the affidavit of Dr. Rappe, and requested that the court grant them an opportunity to do so.

¶12. The trial court entered its Judgment and Findings of Fact and Conclusions of Law on May 3, 1996. In light of *Ferguson,* the court granted judgment on the pleadings on the plaintiffs' personal injury claims and dismissed those claims with prejudice. The court also dismissed the plaintiffs' claims for punitive damages. In disposing of the remaining claims, the court found that "Plaintiffs' lack of legally sufficient proof of exposure and causation entitles the Leaf River Defendants to summary judgment on all of Plaintiffs' claims." This appeal followed.

## II.

¶13. This Court employs a *de novo* standard in reviewing a grant of summary judgment. *Allen v. Mac Tools, Inc.,* 671 So. 2d 636, 640 (Miss. 1996*); National Farmers Union Property & Cas. Co. v. First Columbus Nat'l Bank,* 669 So. 2d 767, 769 (Miss. 1996); *Owen v. Pringle,* 621 So. 2d 668, 670 (Miss. 1993). A trial court may grant summary judgment if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. *See* Miss. R. Civ. P. 56; *Roussel v. Robbins,* 688 So. 2d 714, 725 (Miss. 1996); *Morgan v. City of Ruleville,* 627 So. 2d 275, 277 (Miss. 1993).

## III.

¶14. The Anglado Plaintiffs first argue that the affidavit of Dr. Rappe, which was relied upon by the trial court in granting summary judgment for the defendants, was not properly before the court "inasmuch as it was not submitted in compliance with Rule 56, which requires that supporting affidavits be submitted with the motion."[7] The plaintiffs offer no authority for this interpretation of Rule 56. Even if it were true, however, that affidavits in support of summary judgment must invariably be submitted with the motion, it is apparent that the Leaf River Defendants did just that.

¶15. The affidavits of Rappe and Tondeur were submitted with the Second Motion of Defendants for Judgment on the Pleadings, or, in the Alternative, Summary Judgment, filed on November 17, 1995. It is this motion, filed by the defendants after this Court's ruling in *Ferguson,* which is presently before the Court. Consequently, there is no merit to the plaintiffs' claim that the Rappe affidavit was not properly before the trial court merely because it was not filed contemporaneously with the original motion for summary judgment.

¶16. Moreover, it is not true that the plaintiffs had no opportunity to rebut the conclusions of Dr. Rappe's affidavit. The defendants first submitted Dr. Rappe's affidavit in March of 1994. As early as

December of 1994, the plaintiffs stated that they had "been able to develop significant scientific evidence that directly contradicts and refutes the affidavits of Tondeur and Rappe." After the defendants filed their second motion for summary judgment in November of 1995, the plaintiffs obtained an extension of time within which to respond. In their response, the plaintiffs made no mention of any need for additional time to submit evidence opposing the renewed motion, and the "significant scientific evidence" mentioned almost a year earlier was not submitted.

¶17. This Court has noted that a party against whom a motion for summary judgment has been made must respond with diligence. *Richmond v. Benchmark Constr. Corp.,* 692 So. 2d 60, 62 (Miss. 1997). She remains silent at her peril. *Travis v. Stewart,* 680 So. 2d 214, 217 (Miss. 1996); *Fruchter v. Lynch Oil Co.,* 522 So. 2d 195, 198 (Miss. 1988). We hold that if the plaintiffs indeed had evidence to refute the conclusions of the Rappe affidavit, they had a full opportunity to present it in their response to the second motion for summary judgment.

## IV.

¶18. The Anglado Plaintiffs also argue that they demonstrated sufficient evidence of exposure to dioxin and other chemicals discharged by the defendants' pulp mill sufficient to create an issue of fact on their claims for toxic trespass and for private and public nuisance. In support of their argument the plaintiffs cite *Ferguson* and *Simmons,* two dioxin cases decided by this Court in favor of the defendants. The *Simmons* Court noted that these two cases "are essentially identical with regard to the failure of the plaintiffs to establish either a nuisance or trespass cause of action, given that Simmons and Ferguson both failed to have their property or themselves tested for the presence of dioxin." *Simmons,* 697 So. 2d at 1085. The plaintiffs in the present case argue that the same deficiencies existing in *Ferguson* and *Simmons* are not present here since their test results constitute evidence that "dioxin is present on or in the immediate vicinity of the Plaintiffs' property."

¶19. The plaintiff has the duty in a tort case to prove by a preponderance of the evidence that the party charged with the tort is the one actually responsible for it. *Rucker v. Hopkins,* 499 So. 2d 766, 769 (Miss. 1986); *Magnolia Petroleum Co. v. Williams,* 222 Miss. 538, 542, 76 So. 2d 365, 367 (1954). In order to establish a claim for common law trespass or nuisance, therefore, the plaintiffs must present sufficient evidence not only that their properties were exposed to chemicals but also that those chemicals came from the defendants' pulp mill. *See, e.g., Masonite Corp. v. Dennis,* 175 Miss. 855, 866, 168 So. 613, 616 (1936); *Phillips v. Davis Timber Co., Inc.,* 468 So. 2d 72, 79 (Miss. 1985); *Comet Delta, Inc. v. Pate Stevedore Co. of Pascagoula, Inc.,* 521 So. 2d 857, 859 (Miss. 1988) ("[o]ne is subject to liability for a private nuisance if, but only if, his conduct is a legal cause of an invasion of another's interest in the private use and enjoyment of land"). *See also Berry v. Armstrong Rubber Co.,* 989 F.2d 822, 829 (5th Cir. 1993) (under Mississippi law plaintiff must present evidence of an invasion by defendant in order to withstand summary judgment).

¶20. In a summary judgment hearing, "[t]he burden of producing evidence in support of or in opposition to [the] motion. . .is a function of [Mississippi] rules regarding the burden of proof at trial on the issue in question." *Fruchter,* 522 So. 2d at 198 (citing *Galloway v. Travelers Ins. Co.,* 515 So. 2d 678, 683 (Miss.1987)); *see also* Fed. R. Civ. P. 56; *Celotex Corp. v. Catrett,* 477 U.S. 317, 322-24 (1986). Consequently, it is incumbent upon the plaintiff opposing the motion for summary judgment to set forth, by affidavit or some other form of sworn statement, specific facts which give

rise to genuine issues that should be submitted to a jury. *Fruchter,* 522 So. 2d at 199. *See also Brown v. Credit Ctr., Inc.,* 444 So. 2d 358, 364 (Miss. 1983) (once movant points out absence of proof on claims as to which non-movant has burden at trial, non-movant must bring forward specific probative evidence demonstrating existence of material fact issue).

¶21. In the present case, the Leaf River Defendants have presented uncontradicted evidence that the dioxins and other chemicals present on the tested properties are inconsistent with the "fingerprint" of pulp mill effluent and that the chemicals were not discharged by the mill. The defendants have bolstered this evidence with further uncontradicted evidence that dioxin is produced by many natural and artificial sources,[8] and that the chemicals present on the tested properties are consistent with normal "background" levels in rural South Mississippi.

¶22. The Anglado Plaintiffs produced no evidence that the defendants' mill is the source of any dioxin in the samples. The plaintiffs concede that they "did not produce an affidavit that the dioxin present on their property came from the Defendants' paper mill." Their test results are silent on the source of the dioxin contained in the samples, and plaintiffs offered no evidence relating the fingerprint of dioxin discharged by the mill with the fingerprint of dioxin detected in the tested samples. Nor was there any evidence that no other dioxin sources exist in the area in which the samples were taken.

¶23. The plaintiffs argue that "[i]t is for a jury to determine whether this chemical contaminant originated from the Defendants." This very argument was rejected in *Ferguson.* In *Ferguson,* this Court contrasted a situation similar to the present case with the circumstances present in *Shutes v. Platte Chem. Co.,* 564 So. 2d 1382 (Miss. 1990), a case in which a directed verdict for the defendant chemical company was reversed:

> The differences between the proof offered in *Shutes* and in this case are manifest. The Shutes proved that the only entity in the vicinity of their property producing linuron was Platte Chemical, and that linuron was actually on their property. The Shutes testified as to the actual physical effect Platte Chemical had on their health and on their property. The Fergusons produced no proof of this type.

*Ferguson,* 662 So. 2d at 662. Like the plaintiffs in *Ferguson,* the Anglado Plaintiffs have produced no evidence linking the dioxin on their properties with that discharged by the mill. In light of this failure by the plaintiffs to establish any evidence that the defendants' pulp mill is the source of the dioxin found on their properties, we therefore hold that the grant of summary judgment by the trial court was proper.

¶24. In regard to the plaintiffs' property damage claim, it is noted that even if the affidavit of G.B. Vickery is taken as true, *see supra* note 4, the plaintiffs cannot recover for lessened property values due to an unwarranted public perception of danger. Such a "stigma theory" has been expressly rejected by this Court. *See Ferguson,* 662 So. 2d at 663. Additionally, while a claim of fraud was raised in the plaintiffs' original joint Complaint, the Anglado Plaintiffs do not raise the issue of fraud in their brief before this Court. Even if the issue were properly before the Court, however, there is no evidence in the record to support such a claim.

## V.

¶**25.** For the foregoing reasons, the grant of summary judgment is affirmed.

¶26. **AFFIRMED.**

**PRATHER, C.J., PITTMAN, P.J., ROBERTS, SMITH, MILLS AND WALLER, JJ., CONCUR. McRAE, J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY SULLIVAN, P.J.**


**McRAE, JUSTICE, DISSENTING:**

¶27. In 1989 the Mississippi Department of Environmental Quality released a report showing that fish in the Leaf River and Pascagoula River contained dioxin, and it warned citizens to stop eating the fish from these rivers. Subsequently, the Mississippi Commission on Wildlife, Fisheries, and Parks ordered that the Leaf River, Pascagoula River, and Escatawpa River be closed to commercial fishing, posting "no fishing" along the rivers. Now the majority is denying Mississippi citizens of their rightful claims for loss of public and private use and loss of value of their property affected by the presence of dioxin. More significantly, the majority unnecessarily expands the decision in *Leaf River Forest Products, Inc. v. Ferguson*, 662 So. 2d 648 (Miss. 1995) by requiring plaintiffs to demonstrate a "fingerprint" of the chemical dioxin--one of the world's deadliest chemicals--to show that dioxin was placed into the streams at the Augusta Leaf River mill and that the dioxin obviously flowed downstream from there. I respectfully dissent.

¶28. Experts have already testified that dioxin has been found on the premises. The Anglado plaintiffs conducted tests to determine the presence of dioxin **on their property** and provided these results to rebut Leaf River's initial motion for summary judgment. Dr. Arthur Hume also testified that the samples contained dioxin. The evidence presented by the Leaf River defendants merely contradicted the plaintiffs' evidence, at best. As a result, the trial court should not have granted the Leaf River defendants' motion for summary judgment.

¶29. Yet, despite the evidence presented by the plaintiffs, the majority requires them to go even further and show a "fingerprint" to prove that dioxin came from that specific plant. The familiar burden of establishing proof by a preponderance of the evidence does not require "fingerprinting." Moreover, our summary judgment burden certainly does not require such proof. Unfortunately, the majority has been ensnared by the same trap that has befallen some of our trial judges. The requirement is simple; if conflicting evidence exists as to proof of a cause of action, the court must then stop and allow a jury resolve the issue.

¶30. In reviewing the grant or denial of summary judgment, this Court determines only whether there are issues to be tried. *Heritage Cablevision v. New Albany Elec. Power Sys.*, 646 So. 2d 1305, 1309 (Miss. 1994). In making this determination, this Court conducts a de novo review. *Id.* This Court reviews all the evidentiary matters in a light most favorable to the nonmoving party, and if, in this view, the moving party is entitled to judgment as a matter of law, summary judgment in his favor is appropriate. *Id.* The burden of showing that no genuine issue of fact exists is on the moving party. "All that is required of a nonmoving party to survive a motion for summary judgment is to establish a genuine issue of material fact by the means available under [Miss. R. Civ. P. 56(c)]." *Spartan Foods Sys., Inc. v. American Nat'l Ins. Co.*, 582 So. 2d 399, 402 (Miss. 1991).

¶31. In *Ferguson*, this Court found that the defendant companies were not liable because the evidence was insufficient to hold them liable for infliction of emotional distress based on intentional, willful, wanton or grossly negligent conduct. *Ferguson*, 662 So. 2d at 658-59. Prior to trial, the Fergusons failed to have themselves or their property tested for dioxin. *Id.* at 659. The only test conducted near the property in *Ferguson* was approximately eighty miles upstream from where the damage allegedly occurred. *Id.* at 653. The *Ferguson* majority, noting the lack of tests done to show the possible levels of dioxin or any other pollutant on the property under review, found "that mere stigma, supported by tests showing dioxin contamination no closer than eighty river miles north of the alleged damage, is not sufficient evidence of compensable injury." *Id.* at 664. Similarly, the plaintiff in *Leaf River Forest Products, Inc. v. Simmons*, 697 So. 2d 1083 (Miss. 1996), presented no evidence of dioxin tests conducted on his property or on his person. This Court again determined that without showing that dioxin was present on the plaintiff's land or in his body, the plaintiff's proof could not support a recovery under a claim of nuisance or trespass. *Id.* at 1085-86. Obviously the Anglado plaintiffs, fully aware of the *Ferguson* and *Simmons* cases, performed the requisite tests on their property as initially required by *Ferguson*. Those tests revealed the presence of dioxin on their property, thereby overcoming the hurdles faced by the plaintiffs in *Ferguson* and satisfying their burden on summary judgment.

¶32. It is apparent that the Anglado plaintiffs have established through testimony that dioxin is present on their property. The problems faced by the majorities in *Ferguson* and *Simmons* simply are not present in this case. Circumstantial and direct evidence is present in this case to present a case to a jury. Dioxin came from the Leaf River mill and dioxin was found on the Anglado plaintiffs' property. The majority discusses the elements of the claims only because the Anglado plaintiffs have admitted that Ferguson has precluded their claims for increased risk of future disease and the stress that would arise from fear of future disease, medical monitoring and punitive damages. However, the claims for which the plaintiffs have offered substantive proof of the presence of dioxin--continuing toxic trespass, public and private nuisance, and property damage--should go forward. A jury should be allowed to evaluate these claims. To hold as the majority has would simply give total immunity to any pollutant of our waterways because one would have to prove exact "fingerprint" identification to get beyond summary judgment. Because I do not agree with the rationale employed by the majority today, I respectfully dissent.

**SULLIVAN, P.J., JOINS THIS OPINION.**

1. The stock of LRFP is owned by LRC; the stock of LRC is owned by GNNC; and GNNC is a subsidiary of Georgia-Pacific. Warren Richardson is Vice-President of LRFP and General Manager of the pulp mill operated by LRFP. Acker Smith is the mill's Manager of Environmental Affairs.

2. A summary of the underlying facts relating to the controversy surrounding the Leaf River Defendants can be found in *Leaf River Forest Prods., Inc. v. Ferguson,* 662 So. 2d 648, 650-55 & 659 (Miss. 1995); *Leaf River Forest Prods., Inc. v. Simmons,* 697 So. 2d 1083, 1083-85 (Miss. 1996); and *Beech v. Leaf River Forest Prods., Inc.,* 691 So. 2d 446, 447 (Miss. 1997).

3. Among the exhibits attached in support of the motion for summary judgment were the affidavits of Defendant Warren Richardson and Karen B. Webb, M.D. Richardson testified that more sensitive testing which became available in the late 1980's revealed trace amounts of TCDD in LRFP's treated effluent. After the EPA determined that the cause of the dioxin formation was the pulp mill bleaching process, the mill modified this process. Richardson testified that "no 2,3,7,8-TCDD has been detected in any monthly testing of the treated effluent discharged by the Mill since August 1990." Attached to Richardson's affidavit were the results of fish studies conducted by the DEQ which bolstered this claim. In regard to these fish studies, Richardson further stated that prior to receiving any test results of fish from the Pascagoula River, the public was warned not to eat certain fish, and commercial fishing was banned on that river. After the DEQ analyzed the test results, however, the warning signs were taken down and the commercial fishing ban was lifted. The other affiant, Dr. Webb, is an expert in environmental medicine and principal investigator for a series of studies evaluating Missouri residents exposed to dioxin in the soil near their homes. She testified that dioxin is present throughout the environment and that determination of environmental dioxin levels is not an accurate way to predict individual exposure.

4. The plaintiffs also submitted two other affidavits in opposition to the defendants' motion. One was from Plaintiff John R. Fayard, Jr., who testified that he had purchased his Poticaw Camp property primarily for fishing, boating and swimming. He stated that he had read reports of toxic discharges from the mill into the Leaf River; had observed posted warnings against advising the public not to eat certain fish; that he had observed the bayou and the river become discolored; and that he had taken fish out of the bayou and river with "unnatural looking sores and spots on them." Mr. Fayard stated that all of these facts resulted in a lessened personal enjoyment and use of his property. G.B. Vickery, a real estate appraiser, testified in his affidavit that the "negative publicity generated by the reported chemical pollution of the Pascagoula River area" resulted in a forty-three percent drop in the Anglado Plaintiffs' property values.

5. Apparently, neither the Reply Brief nor the affidavits of Tondeur and Rappe were placed in the court record at this time. Both the brief and the affidavits are included in the record at a later date, as attachments to the defendants' second motion for summary judgment filed November 17, 1995.

6. This denial of the defendants' summary judgment motions took place on the day the presiding judge, James E. Thomas, resigned from the circuit court bench to take his seat on the newly-formed Mississippi Court of Appeals. Judge Thomas stated no reason for the denial of the motions in his Order. The case was transferred to the docket of Judge Jerry O. Terry.

7. The plaintiffs apparently did not raise an issue regarding Tondeur's affidavit since it was not relied upon for the circuit court's judgment.

8. The various sources of dioxin in soil include forest fires, municipal waste incinerators, hospital and chemical incinerators, fireplaces and woodburning stoves, automobiles which burn leaded gasoline, wood-treating chemicals, sewage treatment, steel mills, composting and production and use of chlorine. (C.P. 204; 886).